ALLABEDA B. KIRKLEY *v.* THOMAS T. LACEY.

*Married Woman—Sole Trader—Agent.*

Under the statute in this State a married woman, with her own money and property, may engage in any kind of business, as a *femme sole.*

A married woman may carry on her business through an agent and may constitute her husband such agent, who may as such do anything pertaining to said business.

The business thus carried on is not a fraud upon the creditors of the husband if his money is not used in the conduct of the same.

Fraud is a matter of fact to be proven and will never be presumed.

(*Kent, May 6, 1885.*)

TRESPASS ON THE CASE against the defendant, Sheriff of Kent County, who seized certain personal property, claimed by the plaintiff to be hers, upon executions issued to him against James Kirkley, husband of the plaintiff.

The plaintiff testified that she was engaged in business and her husband, James Kirkley, acted as her agent. The personal property, consisting of salt hay, taken by the defendant, was her property, bought with her money. She had received money at different times from her mother and had on several occasions borrowed from other parties.

*Mr. Fulton,* on cross examination, asked her if her husband did not take funds or money arising from the sale of such goods and appropriate it to the payment of his own debts?

*Mr. Massey,* for plaintiff, objected to the admissibility of the question as not being material or pertinent to the inquiry whether or not the goods in question were the property of the plaintiff when they were seized and sold by the defendant.

THE COURT overruled the objection and the witness answered the question in the negative.

Other witnesses testified of their knowledge of her doing business through her husband as agent, and of the several loans made to her, one of which was by the National Bank of Dover by discount of the endorsed note of "James Kirkley, Agent," the proceeds being placed to his credit in the same style and checked out in like manner.

Other witnesses testified that they had transacted business with James Kirkley during the time in question and they heard

nothing of his acting as agent for his wife. It was testified that the plaintiff was never engaged in business before and had no means before her marriage with James Kirkley. Several deeds were offered in evidence of the purchase of real estate by the plaintiff the prices therefore aggregating several thousand dollars, and more than the sums of money borrowed by her.

James Kirkley had been in the business of buying hay for several years when he failed and was sold out by the sheriff, after which time the business was claimed to be carried on in the name of and for the plaintiff. Witness testified that the business to all appearances was carried on as theretofore.

*Mr. Massey* asked the deputy sheriff what James Kirkley, the husband of the plaintiff said to him when he went to Leipsic to levy on the property, about the hay not being his, but the property of his wife, and only in his hands as her agent.

Question objected to on the ground that a husband cannot be a witness for his wife in any case.

THE COURT overruled the objection and admitted the question.

*John P. Saulsbury,* for plaintiff :

Where the officer seizes the property of one person on an execution against another, he is a trespasser *ab initio*.
*Herm. on Execu.,* 635.
A husband may act as the agent of his wife in any business carried on by her.
*Bish. on Husband and Wife,* 439 ; 59 Barb., 61 ; 50 Ill., 481; 25 Mich., 195 ; 33 N. Y., 518 ; *Statute as to married women* ; *Rev. Code,* Chap. 550, 479, 480.
Fraud must be proved like any other fact.

*J. Alexander Fulton,* for defendant :

At common law all personal property of the wife in her possession becomes the property of her husband absolutely. A married woman must prove her title to personal property after the insolvency of her husband beyond a reasonable doubt, as against his creditors.

18 Pa., 363; 38 Pa., 277; 36 Pa., 410; 35 Pa., 375; N. J. Eq., 18, 472; Pa. Dig., 996; 42 Barb., 567.

*Edward Ridgely* and *James L. Wolcott*, on same side.

*George V. Massey*, for plaintiff, cited 33 N. Y., 520, over-ruling 42 Barb., 569, cited above.

He contended that the proof is clear and express that the hay, the property seized and sold by the sheriff, was bought with the money of the wife, the plaintiff, without having been mixed with any goods or property of her husband seized and sold with it. If the plaintiff was the owner of the hay, she was entitled to the verdict of the jury; but if not, then the defendant was entitled to the verdict.

*Del. Laws*, 15 Vol., 603; 25 Mich., 195; *Married Women's Act, Del. Laws*, 15 Vol., 289, Sec. 1.

WHITELEY, J., charging the jury:

This is an action of tresspass by plaintiff against Sheriff Lacey for levying on and selling her goods, hay, &c., on executions against her husband and another.

Her claim is, as she declares under oath, that the hay levied and sold was hers—her property; and gave account of how she obtained money to buy it after her husband's failure, she borrowed money from Seward, $100, at two different times, from bank on Swane's & Pickering's endorsement, $700; and money from her mother, and rent of farm, sale of wood and rails and posts.

S. J. Fowler proves that he was sent by Kirkley to Mrs. Kirkley, the plaintiff, several times to get money to pay for hay bought by him.

Then his declaration to several persons, to all from whom he bought, that he was buying for his wife.

Proof of agency by parol and power of attorney.

The defendant contends on the other hand, that the hay was the property of James Kirkley; that the plaintiff's claim is a sham, and a fraud upon James Kirkley's creditors; that James Kirkley failure in 1878, and all of his property, personal and real, was sold, and he was left indebted thousands of dollars, and that he continued his business the same as he did before the failure,

only adding to his name the word " Agent." That the plaintiff had no means of her own to engage in business, and only derived from loans small sums of money, which were insufficient to carry on such large purchases of hay as were handled by her husband. That the sums she borrowed from the bank and different persons were all absorbed in purchases of real estate which she made.

That Kirkley being agent for his wife was unknown to most of the citizens of the neighborhood.

That portions of hay bought at the time he alleged he was agent for his wife were sent to Philadelphia to commission merchants and charged by them against his old debts, or otherwise went to his credit.

That Mrs. Kirkley admitted to one of the witnesses that the property was put in her name to keep off husband's creditors.

The point of the case is, is this engagement in business by the plaintiff, Mrs. Kirkley, a real *bona fide* engagement in business, or is it, as is contended by defendant, a sham and fraud upon her husband's, Jas. Kirkley's, creditors? As you find this fact will determine for which party your verdict should be. The law of the case is this: Prior to certain Acts of Assembly, beginning in 1865 and running up to this time, a married woman could have no property distinct and separate from her husband. It was as limited and controlled exactly as it was at common law. A married woman had really no legal rights of property. But in 1865 and in several succeeding legislatures, the General Assembly has passed laws releasing and emancipating married women from this marital bondage. They began first by releasing certain property from the control of her husband, relieving it from liability for her husband's debts, &c. Then in 1871 they released certain money and other personal and real property from liability for her husband's debts, leaving it liable for her own debts. Then in 1873 they passed a more enlarged act, amended* in 1875, protecting her property from

---

* NOTE.—Amendment of act of 1873, by Chap. 165, of 1875, is in following words :

That the real and personal property of any married woman, which has been heretofore acquired, is now held, or which she may hereafter acquire in any manner whatever, from any person, other than her husband, shall be her sole and separate property, and the rents, issues and profits thereof shall not be subject to the disposal of her husband, nor liable for his debts.

her husband's debts, and releasing it from his control and putting it altogether under her own control and management.

These two acts gave her power to sue, and made her liable to be sued, and made it lawful to make any and all contracts necessary to be made with respect to her own property, and suits by her and against her might be maintained as though she was a " femme sole " i. e., a single woman. The effect of this amended act is that she can, with her own money or property, become a trader, merchant, or in fact follow any of the occupations or business of life, and with the same rights, powers and liabilities as though she were a single woman, or as though she were a man. The plaintiff therefore had, under our law, the right with her own money, to enter into the business of buying and selling hay. Though a married woman, she was a femme sole hay merchant, and we say, in the language of Judge Cooley in the case of Rankin v. West, reported in 25 Mich., that " the fact that the husband, by reason of financial embarrassments, is unable to carry on business and support the family in his own name, is no impediment to the wife's engaging in business for that purpose. It would seem, on the other hand, to constitute a very sufficient and laudable motive for her doing so."

If she then can carry on business for herself, she certainly can carry on her business through an agent. But it is objected that her husband cannot be her agent, or being so it is a fraud upon his creditors. We do not think so. What is more natural or more safe for the wife than that her husband should be the agent, in the management of her property or her business. He is bound by greater obligations for its careful and prudent management of it, than would bind a stranger. The legal capacity of the husband to be such agent has been recognized and admitted by all text writers upon the subject, and by the decisions of most of the States where they have what is called a " married woman's act," and where the question has been raised. Nor in our judgment is a business of the wife's thus carried on through the agency of the husband any evidence in itself in law of a fraud upon the creditors of such husband, even if its purpose was to keep the property from the reach of such creditors. If the entire capital was contributed by her from her separate estate, or by loans made by herself, and by profits in the business, how are the husband's creditors defrauded? They

have every remedy which they had before, and it is no cause of complaint that the wife chooses to make her own arrangements so that her husband's debts shall not be enforced against her purchases. And such arrangement, if the property was hers, is not fraudulent in law or fact. If the money, however, with which the hay was bought, was the husband's, or came from him, that would be a badge of fraud.

This you are to determine and decide accordingly.

(Reviewed authorities cited by defendant.)

Now as to what constitutes *Fraud*, and how it is to be proven. The law will not suffer or permit it to be inferred. It must be proven, actual fraud, or fraud in the ordinary sense and meaning of the term is never presumed by law to exist; it is a matter of *fact* to be proved to the satisfaction of the jury by the evidence in the case; and such proof must be made by the party alleging, asserting and relying upon it. This proof usually consists in proof of acts or conduct which the courts call *badges* of fraud. It is impossible to get direct proof of it. No one is foolish enough to admit that he is committing a fraud. It is for the court to judge and decide what is such a badge. We have said that constituting the husband as agent is not such a badge; neither do we think that the husband, it having been previously proven that he was the agent, had a power of attorney to attend to the business for his wife, that his selling, buying and attending generally to the business is such badge for such conduct was in the line of his agency.

This is all, gentlemen, which I think necessary to say on the law.

If your verdict should be for the plaintiff, the plaintiff is entitled to damages for the seizure and sale of the hay.

It was sold by sheriff for the sum ·of $659.50, interest from ——— 21, 1881, this sum then with its interest, is the proper measure of such damages.

If verdict, however, should be for defendant, your verdict should be simply not guilty, or for the defendant.

Verdict for plaintiff.