JOHN LEONARD and MICHAEL BLAKE, trading as JOHN LEONARD & COMPANY, *vs.* JOHNSON FORGE COMPANY, a corporation of the State of Delaware.

*Assumpsit—Common Counts—Contract; Construction of; Rescission of; Refusal to Accept—Acceptance—Recoupment—Warranty; Breach of—Damages.*

1. Where the contract provided for the delivery of goods, cash payable on receipt of each one hundred tons, and the defendant demanded that plaintiffs should put into his hands two or three cars over the one hundred tons, by way of pledge or guaranty for the performance of the contract, as a new condition for the payment already due thereunder; *held* that plaintiffs were relieved from any further delivery by such a refusal under the circumstances of the case. If the buyer not only refuses to pay for an installment, but puts his refusal ·on such grounds as justifies the inference that he repudiates the entire contract, *or insists upon new terms different from the original agreement,* the vendor may be relieved from any subsequent delivery.

2. Where goods are sold at a specific price, and delivered under an agreement that they shall be of a certain quality, there is an implied warranty that they are of such quality, which goes with the goods. If they prove to be inferior in quality, it is a breach of the warranty, and the buyer, even after acceptance, where the goods have not been paid for, may plead the breach of the warranty in reduction of damages, in an action brought by the vendor for goods sold and delivered; and he would be entitled to a reduction of the price agreed upon to the extent of the damage he may have sustained by reason of the delivery of such inferior goods. The measure of the plaintiff's damage in such case would be the market value of the goods at the time and place where they were sold and delivered.

(*November 28, 1900.*)

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*Charles M. Curtis* for plaintiffs.

*Benjamin Nields* and *John P. Nields* for defendant.

Superior Court, New Castle County, November Term, 1900.

ACTION OF ASSUMPSIT (No. 147, September Term, 1900). Facts appear in charge of Court.

LORE, C. J., charging the jury:

Gentlemen of the jury:—The contract out of which this action grew, is in the following words:

"New York, Feb. 25, 1899.
    "Sold to Johnson Forge Co., Wilmington, Del., for account of Messrs. Jno. Leonard & Co., about three hundred (300) tons number one wrought scrap iron delivered f. o. b. cars at the works of the buyer; (provided the cars can make a delivery at their works) price; fourteen and one-half (14.50) dollars per ton of 2240 lbs. Cash payable on receipt of each one hundred (100) tons.
                    "GEO. H. JONES, BROKER.
"Accepted March 1st, 1899,
        "JOHNSON FORGE CO."

This suit is not brought on the contract but on the common counts, for the sum of $1452.96 with interest from June 27, 1899; claimed as the price of one hundred tons and 460 pounds of number one wrought scrap iron, at $14.50 per ton, as for goods sold and delivered; the quantity sued for being a part of the three hundred tons named in the contract.

The defendant resists recovery on the ground, that the plaintiff failed to deliver the residue of the three hundred tons, under the contract, viz., 199 tons and 1780 pounds; and further that the one hundred tons and 460 pounds actually delivered were greatly inferior in quality to number one wrought scrap iron specified in the agreement, and were not delivered within the time and according to the terms of the contract.

Under these contentions the defendant insists that it may recoup by way of counter claim against the demand of the plaintiffs; *first*, whatever damage it has sustained by reason of the

failure of the plaintiffs to deliver the balance of the three hundred tons; *second,* whatever damage it has sustained by reason of the inferior quality of the iron actually delivered and accepted.

We will deal first with the claim as to the balance of the iron not delivered.

The defendant has asked us to charge that if the jury shall find from the evidence that the acts and conduct of the defendant as shown in this case, did not evince an intention no longer to be bound by the contract of February 25th, 1899, or do not show an intention wholly to abandon the contract, then the defendant is entitled to recoup by way of counter claim the plaintiff's demand, such damages as it suffered by reason of plaintiffs' failure to deliver the balance of 199 tons and 1780 pounds of the said iron under the contract.

We decline so to charge, for the reason that it would be submitting to the jury as a question of fact, that which has already been decided as a question of law by the Court, in its rulings upon the admissibility of evidence upon that point. We have seen no reason to change our view in this respect.

That ruling was based, among other things, upon the language of the defendant, in reply to the demand of the plaintiffs for payment, for the one hundred tons already shipped and accepted, where it says in its letter of June 29th, 1899: " In regard to settlement, we will not remit you for this lot, until we get enough of the balance of contract in our hands to know that we will receive the amount we purchased. As soon as we have two or three cars over and above the hundred tons, upon which payment is to be made, we will remit check."

This was a demand that the plaintiffs should put into the hands of the defendant two or three cars over the one hundred tons, by way of pledge or guaranty for the performance of the contract, as a new condition for the payment already due thereunder, and was insisting upon new terms different from the original agreement, which was " Cash payable on receipt of each one hundred tons."

Under this admitted state of facts the Court held as a matter of law, that the plaintiffs were relieved from any further delivery by such a refusal under the circumstances of this case.

In *Benjamin on Sales, 568 (6 Am. Ed.)*, the rule is stated as follows: "There is abundant authority in America as in England, that if the buyer not only refuses to pay for an installment, but puts his refusal on such grounds as justifies the inference that he repudiates the entire contract, *or insists upon new terms different from the original agreement*, the vendor may be relieved from any subsequent delivery."

This is supported both by reason and authority.

*Stephenson vs. Cady, 117 Mass., 6 ; Regg vs. Moore, 110 Pa., 236 ; Walton vs. Black, 5 Houst., 139.*

Many nice distinctions have been drawn, and there is much conflict in the law, as to what constitutes a refusal on the part of the buyer to pay for an installment of goods delivered as will release the seller from subsequent delivery. We find no cases going to the extent claimed by the defendant in this case.

The cases of *Freath vs. Burr, 9 C. P., 208*, and of *Mersey Steel and Iron Co. vs. Naylor, 9 Q. B. D., 648*, so much relied upon by defendant, may be distinguished from the case at bar. In the first named case the buyer refused to make the payment due, claiming a right to hold it by way of set-off, but in fact subsequently paid the installment. In the second case the refusal of the buyer to pay was because proceedings had been taken to wind up the business of the seller in court, and there was uncertainty to whom payment should be made. In *Nonington vs. Wright, 115 U. S. R., 188*, Judge Gray refers to these cases, not specially by way of approval, but rather as distinguishing them from the case in hand, which was a *delivery* of goods in installments and not one of *payment* by installments. This case shows quite clearly the subtle distinctions and the conflict of authority in such cases.

We have dwelt thus far upon the question of the iron not delivered, because of the earnestness of the defendant in urging this point.

In reaching your verdict, you are not to consider the defendant's claim for damages growing out of the non-delivery of the balance of the three hundred tons. The iron not delivered is not in question before you, and with it you have nothing to do; further, you are not to be governed in any way by what the Court has heretofore referred to as the evidence in the case in dealing with this particular point, as such evidence was only stated by way of illustration and to show the ground of our conclusion upon the question of law. You are to be governed only by your recollection of the evidence.

This brings us to the second ground of defense, viz., the right of the defendant to reduce the claim of the plaintiffs to the extent of any damage sustained by the defendant by reason of inferior quality of the scrap iron actually delivered and accepted.

It seems to be settled, that where goods are sold at a specific price, and delivered under an agreement, that they shall be of a certain quality, such for instance as No. 1 wrought scrap iron, named in the case before us, that there is an implied warranty that they are of such quality, which goes with the goods. If they prove to be inferior in quality, it is a breach of the warranty. The buyer, even after acceptance, where the goods have not been paid for, may plead the breach of warranty in reduction of damages in an action brought by the vendor for goods sold and delivered.

*Benjamin on Sales, 891 and 896 (6 Am. Ed.)*

This seems to be the result of the uniform current of decisions, commencing with the opinion of Lord Kenyon in *Carmack vs. Gillis*, decided in 1789 and cited and approved in *Bastian vs. Butler, 7 East, 479*, decided in 1806.

In *Germaine vs. Burton, 3 Stark., 32 (1820)*, it was held in an action of assumpsit for goods sold and delivered at a specific price, that the buyer might prove in diminution of damages, that the goods did not correspond with the sample, but were of inferior quality; and that the seller could not recover more than the usual value of the goods.

This applies with peculiar force to the case at bar, where the suit is upon common counts for goods sold and delivered, in which the right of such diminution has universally been recognized.

To the same effect are *Street vs. Blay, 2 B. & A., 456 (1830); Mondell vs. Steel, 8 M. & W., 858 (1841); Draper vs. Randolph & Co., 4 Harr., 454.*

Indeed we find no countervailing authority.

Upon this point we therefore instruct you, that if you believe from the evidence that the iron delivered by the plaintiffs under the contract proved was inferior in quality to that specified in the contract, the defendant is entitled to a reduction of the price agreed upon to the extent of the damages it may have sustained, by reason of the delivery of such inferior scrap iron, notwithstanding it was accepted by the defendant. The measure of the plaintiffs' damage in such case would be the market value of the iron at the time and place where it was sold and delivered.

Applying the law as we have above stated it to the facts in this case, you are to reach your verdict.

The question of damages to the defendant so far as they relate to the iron not delivered, is not to be considered by you at all, as we have already said.

If from the evidence you believe that the plaintiffs agreed to deliver No. 1 wrought scrap iron to the defendant and that the one hundred tons and 460 pounds of iron actually delivered were not of that quality, but were of inferior quality, the claim of the plaintiffs should be diminished by whatever damage the defendant has suffered by reason of such inferior quality as shown by the proof in this case.

If you should believe that the plaintiffs delivered to the defendant 100 tons of iron which was in quality number one wrought scrap iron, such as named in the contract, in that case the plaintiffs would be entitled to recover for the 100 tons at the contract price, with interest thereon from the time of the completion of the delivery of one hundred tons, inasmuch as the plaintiffs now

make no claim for the 460 pounds alleged to have been delivered in excess of the 100 tons.

(Exception noted for defendant to above charge.)

Verdict for plaintiff for $1574.70.