UNION STONE COMPANY, a corporation of the State of Delaware, vs. THE WILMINGTON TRANSFER COMPANY, a corporation of the State of Delaware.

1. BAILMENT—CARE AND USE OF PROPERTY—NEGLIGENCE OF BAILEE.

The degree of care to be used by a bailee to prevent loss or injury to the property intrusted to him is such care as an ordinarily prudent man would under such circumstances use.

2. BAILMENT—ACTIONS BETWEEN BAILOR AND BAILEE—BURDEN OF PROOF.

Though ordinarily a failure of duty will not be presumed, yet where property, the subject of a bailment, is damaged by the bailee while in his exclusive custody, it is incumbent upon him to satisfy the jury that the injury was not occasioned by his default or neglect.

3. CARRIERS—CARE OF PROPERTY—EXCLUSIVE CONTROL.

Defendant, a transfer company, contracted with plaintiff to move a stone planer; defendant to have the use of plaintiff's traveling crane to load the planer on the dray. While so loading, the traveling crane fell, due to the spreading of the tracks upon which it ran. *Held*, that defendant was liable if the removal of the planer and the use of the crane was under its exclusive control at the time of the accident, in the absence of any assumption of the responsibility upon the part of plaintiff; but if plaintiff guaranteed the sufficiency of the crane, or induced plaintiff to believe that it would safely lift and carry the planer, it was not.

4. BAILMENT—ACTIONS BETWEEN BAILOR AND BAILEE—DAMAGES.

In an action by a bailor against a bailee for injury to property while in his possession, the measure of damages was the difference between the value before and after the injury.

(*March* 19, 1914.)

Judges BOYCE and CONRAD sitting.

*Hugh M. Morris* and *Richard S. Rodney* (of *Saulsbury, Morris and Rodney*) and *James I. Boyce* for the plaintiff.

*William S. Hilles* for defendant.

Superior Court, New Castle County, March Term, 1914.

ACTION OF ASSUMPSIT (No. 114, September Term, 1912) by the Union Stone Company against the Wilmington Transfer Company, to recover for damages to a crane and stone planer alleged to have been caused by the defendant company in carelessly and negligently handling the said property while endeavoring to remove the planer for hire. Verdict for plaintiff.

At the trial, A., vice-president of the plaintiff company, stated: That about a week prior to December 12, 1911, he entered into an agreement or contract with B., superintendent of the defendant company, which was engaged in the general hauling business for the public for hire, to move a planer, used in plaintiff's business, from Front and Commerce Streets to Second and Church Streets in the City of Wilmington, for the sum of thirty dollars, the defendant company to have the use of the traveling crane owned by plaintiff, which crane had a capacity of about ten tons, for loading the said planer upon their wagon. That there was only one thoroughfare for wagons in the building where the planer was located, and that was directly in front of the planer, on to Commerce Street. That the other exit was out in the stoneyard and was not used and could not be used without moving fifteen or twenty tons of stone. That the crane, which was operated upon an overhead track which was braced inside of the building, could not be used beyond the edge of the building toward the stoneyard without danger of falling, on account of the liability of the tracks to spread by reason of the absence there of supports or braces, and that there was a piece of timber either 3 x 4 or 4 x 4 placed across the track at that end of the building to prevent such use. That the table of the planer, weighing about three and one-half tons, was moved safely about seven o'clock on the morning of December 12, 1911. The balance of the planer, weighing three and one-half tons, and the crane were in first-class condition and were, on the day of the accident, in the exclusive custody and control of the defendant company. That upon returning to the building in the afternoon, he found the said planer and crane lying upon the ground at the end near the stone pile in a wrecked and ruined condition, and the piece of timber which protected the end of the track was lying upon the roof of the building. That B., representing the defendant company, in discussing the accident later with A., stated that "the Wilmington Transfer Company would make good those damages, and went so far as to have me go get a man to give him an estimate on it."

Another witness testified that B., when asked by him how he

was getting along with the work, said: "Oh, bad enough. We had quite an accident across the bridge; came near killing a man. We dropped the crane and the planer and it has broken things up in general. I wish I had never bothered with it at all. It will cost us six or seven hundred dollars."

B., superintendent of the defendant company, testified that some time in December, 1911, A. spoke to him relative to moving the planer and asked the price, and was told that the defendant company would do it for thirty dollars, provided they could use the crane to load the planer with; that A. agreed to this and thereupon a written contract was entered into between the parties; that he asked A. as to the capacity of the crane and whether it was perfectly safe and the latter replied: "It will carry fifteen tons anywhere." B. further stated that there was no other way than that in which they attempted to move it, which was to take it out through the end of the building towards the stoneyard and that there was no stone in the yard that obstructed the passage through it; that on the morning of the accident "we went over there with four men, took our heavy truck in order to load the planer onto the wagon, and upon arrival at the building we ran back to the place where the main portion of the planer was located in the building, fastened the chain hoist on and ran the block back of the traveling crane, hooked it over and picked it up and brought it right straight on across the building, and when we got to the center of the building we turned the crane crossways and ran it to the end of the building and released the planer and let it go down on the crane and moved the side which the traveler runs over on up onto the track and then lifted the planer up again and then pulled it on out, and just as we got out to the end of the building two men were standing under the traveler, one pulling the chain down and the other was making the crane run out towards the end of the building, and another man was on the side of me and they raised it probably a foot or six inches from the ground and the hook on the chain hoist had got caught underneath and one of the men took a crowbar and put it on there to pull the hook out and just as he did the crane fell; the rails parted and it fell."

B. denied that he stated to A. that the company would make good the damage, and also denied the testimony of another witness that he said "it will cost us six or seven hundred dollars."

BOYCE, J., charging the jury:

Gentlemen of the jury:—This is an action by Union Stone Company, the plaintiff, against Wilmington Transfer Company, the defendant, to recover damages alleged to have been sustained by the plaintiff on account of the failure of the defendant to take care of one stone planer and safely carry and convey the same from Commerce Street to Second and Church Streets in this city under the terms of an oral agreement between the parties, and also for injury and damage to a traveling crane used by the defendant in lifting and moving the planer.

The plaintiff claims for its alleged damages the sum of four hundred and seventy-one dollars and seventy-six cents, with interest from December 12, 1911. It is conceded that the defendant engaged to remove the stone planer for the price or sum of thirty dollars, and that the defendant in the removal of the same was to have the use of the traveling crane erected in the building from which the property was to be removed.

The vice-president of the plaintiff company admits that he said to the superintendent of the defendant that the traveling crane had a capacity of ten tons; the latter, however, claims that he was assured that the crane had a capacity from twelve to fifteen tons. The bottom of the planer which was being lifted at the time of the accident was said to weigh from three to three and one-half tons.

You have heard from the several witnesses how the tracks carrying the crane were laid and supported in the building and how they extended and were supported outside of the building at the easterly end thereof. You have had detailed to you the general condition of the building, the openings or means of access, its floor, and its immediate surroundings, as well as the location of the tracks above the floor carrying the crane, but we cannot charge you with respect to matters of fact.

Under the agreement between the parties, it is conceded that

the defendant began to remove the stone planer, and having removed the table of the planer, delivered it to the plaintiff at the location agreed upon; that it then undertook to carry the bed of the planer by means of the crane along the tracks to the east end of the building where the truck on which it was intended to load the planer had been placed, and when, a very few feet outside of the building, the planer was being lifted to or placed on the truck, the tracks carrying the crane spread, and it dropped to the ground, damaging both planer and crane. It is for this alleged damage that this action is brought.

The defendant has requested the court to direct you to return a verdict in its favor. The court is constrained to disregard this request, believing it to be our duty to submit the case to you for your determination from the evidence before you, considered in connection with the law which we deem applicable to the facts of the case. When, under the contract between the parties, the defendant came into the possession of the property for the purpose of removing the stone planer, a bailment was established, which existed while the property was in the custody and control of the defendant.

A bailment is defined to be a delivery of a thing in trust for some special object or purpose, and upon a contract, express or implied, to conform to the object or purpose of the trust. *Story, Bailm.* § 2.

One who delivers personalty to another for the purpose of a bailment such as we have defined is called a bailor, and the person to whom such personalty is so delivered is a bailee.

A bailor may maintain an action for damages where the subject-matter of the bailment has been misused by the bailee, or where a loss or injury to the property has occurred from the latter's neglect. 5 *Cyc.* 213. Where goods or chattels come into the possession of another under a bailment, it becomes and is the duty of the bailee to exercise due and reasonable care with respect to such property under the terms of the bailment.

[1, 2]   The degree of care required to be exercised is such as is reasonably necessary to prevent loss or injury to the property. If loss or damage happens to the property as the result of

a failure to exercise due and reasonable care with respect thereto, that is from the want of that degree of care such as an ordinarily prudent man would have exercised under like circumstances, it constitutes a neglect of the duty imposed by the contract of bailment and renders the bailee liable for whatever loss or injury the bailor may have sustained by reason of such failure of duty. Ordinarily failure of duty will not be presumed. It must be proved by the plaintiff. But where property under a contract of bailment is damaged or injured while in the exclusive custody of a bailee, his servant or agent, it is incumbent upon the bailee to satisfy the jury that the injury was not occasioned by the default or neglect of himself or his servant or agent. *Pusey v. Webb*, 2 *Penn.* 490, 47 *Atl.* 701.

[3] If the removal of the planer and the use of the crane were under the exclusive control and management of the defendant, its servant, or agent, the defendant in the absence of any assumption of responsibility on the part of the plaintiff is liable for any loss or injury incident thereto; but if the plaintiff guaranteed the sufficiency of the crane including the tracks and its other equipment for the purpose of lifting and removing the planer from the building to and upon the truck of the defendant, and if this guaranty extended to the entire tracks both inside and outside of the building then the plaintiff assumed the risk and the defendant is thereby relieved from liability.

In other words, if the crane was guaranteed to lift and carry the planer both inside and outside the building, or if the defendant was induced by the plaintiff to believe and did believe that the crane would, in the exercise of reasonable care, prudence and caution, safely carry the planer outside as well as inside the building, and if under all the circumstances such care was exercised by the defendant, then the plaintiff cannot recover for damages to the crane or to the planer, and your verdict should be for the defendant.

If, on the other hand, you are satisfied from the evidence that the plaintiff did not assume any responsibility for the crane outside of the building, or that the defendant in the exercise of reasonable care, prudence and caution under all the circumstances

knew or ought to have known that the crane could not safely be used outside of the building, then your verdict should be for the plaintiff.

[4]  If your verdict should be for the plaintiff the measure of damages is the difference between the value of the property before the injury to it and the value after the injury, not exceeding, however, the sum of four hundred and seventy-one dollars and seventy-six cents, with lawful interest thereon from the time of the injury to the property, to wit, the twelfth day of December, A. D. 1911.

Verdict for plaintiff.