Gustav Weishut, trading in the name, style and firm of R. Liefmann Sons, Successors, for the use of Ignatz L. Radwaner, *vs.* Layton and Layton, Incorporated, a corporation created by and existing under the laws of the State of Delaware.

1.  Sales—Action for Price—Question for Jury—Meeting of Minds.

Where the evidence is conflicting whether a disputed contract of sale evidenced by telegrams, letters, etc., was entered into between the parties, the question is for the jury.

2.  Contracts—What Constitutes.

A "contract" is an agreement between two or more parties for a sufficient consideration to do or not to do a particular thing.

3.  Sales—Contract—Meeting of Minds.

Where from the letters, telegrams, etc., on which a contract of sale was claimed to have been based, the seller understood that delivery was to be made as early as possible in a certain month, perhaps, but not necessarily on a date specified, while the buyer understood that the date specified was an absolute stipulation, there was no meeting of minds and no contract.

4.  Sales—Contracts—Time as Essence.

When goods subject to trade fluctuations in price are the subject of a contract, time is of the essence.

5.  Sales—Contracts—Offer and Acceptance.

Where one party makes a definite offer for the sale of a commodity, there must be an acceptance by the other, absolute and identical with the offer, before a contract results; but ordinarily silence on the part of the one to whom the offer is made is not an acceptance, though there may be instances where he is bound by law to expressly decline the offer, in which case failure to do so results in a binding contract.

6.  CONTRACTS—DOUBTFUL  MEANING—CONSTRUCTION.

Where the language of a contract is doubtful in meaning, that meaning is to prevail against either party in which he knew or had reason to believe that the other party understood it.

7.  SALES—CONTRACT—OFFER  AND  ACCEPTANCE—EVIDENCE.

In determining the existence of a contract for the sale of goods from the telegrams, letters, etc., between the parties, the jury might consider the language, conduct, and conversations of the parties.

8.  SALES—ACTION  FOR  DAMAGES—READINESS  TO  PERFORM.

A seller suing for damages for the buyer's breach of a contract to buy clover seed at a stated price f. o. b. cars, to be delivered at a certain place on a certain day, was bound to show his readiness, willingness, and ability to perform the contract.

9.  SALES—RESCISSION  BY  BUYER—RIGHTS  OF  SELLER.

On the buyer's rescission of a contract of sale, the seller had the right to resell the goods within a reasonable time for the best market price he could obtain under the circumstances.

10.  SALES—ACTION  FOR  DAMAGES—WEIGHT  OF  EVIDENCE—"PREPONDERANCE  OF  THE  EVIDENCE".

For a seller to recover in an action for damages, he must establish his case by a "preponderance of the evidence", which means the greater weight of the evidence.

11.  SALES—ACTION  FOR  DAMAGES—MEASURE  OF  DAMAGES.

In an action for damages upon the rescission of a contract to purchase goods, the seller might recover such an amount as would compensate him for any loss sustained, the basis of damages being the difference between the price of the goods sold and the price obtained on the resale, including any reasonable expenses of the resale, with interest thereon from the date of the buyer's breach.

(*January* 18, 1915.)

Judges BOYCE and RICE sitting.

*Woodburn Martin* and *Levin Irving Handy* for plaintiff.

*Daniel J. Layton, Jr., Robert C. White, Charles W. Cullen* and *Robert H. Richards* for defendant.

Superior Court, Sussex County, adjourned October Term, 1914.

SUMMONS CASE IN ASSUMPSIT (No. 23, April Term, 1913) brought by the plaintiff to recover from the defendant corporation damages for breach of an alleged contract for the sale of two hundred sacks of strictly prime crimson clover seed imported 1912 crop at eight dollars and fifty cents per hundred pounds.

Price f. o. b. cars New York, July shipment from Europe; to be delivered in New York as early as possible in August, maybe on the fifth.

The case was tried twice, the jury disagreeing at the first trial. At the close of the plaintiff's case in the first trial, counsel for the defendant moved for a nonsuit on the grounds set forth in the following opinion of the court refusing the nonsuit.

RICE, J., delivering the opinion of the court:

The defendant moved for a nonsuit substantially on the following grounds:

1. The failure of the plaintiff to show any beneficial interest in Ignatz L. Radwaner the user.

2. The contract called for the delivery of strictly prime German crimson clover seed and there was no evidence to show that the plaintiff was ready and able to deliver seed of such quality.

3. That the minds of the parties never met and therefore a contract did not exist between them.

4. That there was a variance between the allegation and the proof in that the plaintiff was to furnish seed of a certain grade and he proved that the seed was of another grade, therefore there was no evidence upon which the jury could award damages to the plaintiff.

We have carefully reviewed the evidence and refuse to grant a nonsuit for the first, second and fourth reasons assigned.

The third and main reason urged by the defendant presents questions of law of much importance and which are difficult of determination. In determining whether or not there existed a contract between the parties to this suit it is necessary to consider certain letters and telegrams which passed between them.

Some of the questions presented are: Whether the telegram from the defendant to the plaintiff dated June 15, in terms refers to the previous letter of the defendant containing an offer of purchase, or had reference to a letter it at the time intended to send to the plaintiff, or whether it only referred to the telegram of the same date from the plaintiff to the defendant; also whether under all the facts and circumstances surrounding this transac-

tion the silence of the defendant after the receipt of the telegram and letter of June seventeenth, did or did not amount to an acceptance by the defendant of the terms contained in that telegram and letter; also whether the visit on August fifth of the defendant's president to the New York office of the plaintiff and the words by him then and there spoken and its subsequent telegram of cancellation dated August eighth were or were not a recognition of a subsisting contract.

After such consideration as we have been able to give these questions we cannot determine them in that way which makes it our duty to take the case from the jury.

Before the second trial came on, counsel for the plaintiff were permitted to strike out the use in the name of the plaintiff. At the close of the plaintiff's case at the second trial, counsel for the defendant moved for a nonsuit principally upon the ground that it had not been shown that the alleged contract sued upon ever existed between the parties. The motion was denied.

The facts and contentions of the parties appear in the charge of the court to the jury.

RICE, J., charging the jury.

Gentlemen of the jury:—We refuse to give the jury binding instructions as prayed for by the defendant. In this action Gustav Weishut, trading in the name, style and firm of R. Liefmann Sons, Successors, for the use of Ignatz L. Radwaner, the plaintiff, seeks to recover from the defendant, Layton and Layton, Incorporated, damages alleged to have been occasioned by the defendant's cancellation of a contract for the delivery, by the plaintiff to the defendant, of two hundred bales of crimson clover seed.

[1] The plaintiff claims the contract to be evidenced by a number of telegrams and letters which passed between the parties during the month of June, 1912.

Of the written communications passing between the parties and introduced into evidence we believe it is only necessary to refer to certain ones in stating to you the claims of the respective

parties. That the telegrams and letters in evidence were exchanged by the parties is not denied by the defendant.

On June 13, 1912, Layton and Layton, Incorporated, sent a letter from Georgetown, Delaware, containing the following offer, to the plaintiff in New York.

"We shall be glad to make the following offer namely. We will take Scarlet two hundred bags strictly prime imported scarlet clover nineteen twelve crop f. o. b. cars New York. Aug. fifth at 8.00 per hundred pounds. Please wire immediate on receipt of this and oblige."

Under date of June fifteenth, the corporation received the following telegram from the plaintiff:

"6-15-1912.

"Layton and Layton, Georgetown, Del.

"Wire acceptance new prime eight half New York July shipment Europe market higher.

"[Signed] I. L. Radwaner."

The plaintiff on the same date sent the following letter to the defendant:

"New York, June 15, 1912.

"Messrs. Layton & Layton, Georgetown, Del.—Gentlemen: We herewith wish to confirm your letter of the 13th, and wired you today as follows:

" 'Wire acceptance new prime eight half New York shipment Europe market higher (July).'

"We therefore quote

"200 sacks prime imported Crimson Clover, 1912 crop at 8½ cents per lb. f. o. b. cars New York, shipment during July from Europe, for immediate acceptance today; and will be pleased to get to business.

"This price is a rather low one; and awaiting to hear from you by return, we are

"Yours truly, [Signed] I. L. Radwaner."

There is nothing in the evidence to show that this letter was received by the defendant before it sent the following telegram to the plaintiff:

"Georgetown, Del., June 15—12.

"I. L. Radwaner, 171 Broadway, N. Y.

"Will accept basis letter sent telegram price just received two hundred bales.

"[Signed] Layton and Layton."

"3 p. m."

On June seventeenth, I. L. Radwaner sent the following telegram and letter to the defendant:

"New York, N. Y., 6-17-1912.

"Layton & Layton, Georgetown.

"Your telegram booked order our wire June fifteenth will ship as soon as possible.

"[Signed]   I. L. Radwaner."

"New York, June 17th, 1912.

"Layton & Layton, Georgetown, Del.—Gentlemen: Confirming divers telegrams without repeating messages, we have booked your order for my house Liefmann Sons, Succ. 200 German sacks Crimson Clover, strictly prime imported 1912 crop at $8.50 per 100 lbs.  Price f. o. b. cars New York, for July shipment from Europe, but will try to make as early as possible delivery in August in New York, maybe on the 5th.

"We are glad to have this first business result, and assure you that dealing with us will be always smooth and without difficulty, as we have knowledge that you had bad experience with some of the seed houses here.

"Awaiting your further news, we remain

"Yours truly,          I. L. Radwaner."

The president of the defendant corporation admits the receipt and knowledge of the contents of both telegram (Plaintiff's Exhibit No. 8) and letter (Plaintiff's Exhibit No. 9) of June seventeenth, and states that the corporation made no reply to either.

On the fifth of August as claimed by the plaintiff and the sixth as claimed by the defendant, the president of Layton and Layton, Incorporated, went to the New York offices of the plaintiff and made inquiries concerning the seed "he ordered", and on August eighth the plaintiff received the following telegram from the defendant:

"Georgetown, Del., Aug. 8-12.

"I. L. Radwaner, 171 Broadway N. Y. C.

"You have failed to ship crimson clover on fifth order stands cancelled, take note.

"Layton & Layton, Inc."

"8:11 a. m."

The plaintiff claims that the parties entered into a contract for the delivery by the plaintiff to the defendant of two hundred German sacks of strictly prime crimson clover imported 1912 crop at eight dollars and fifty cents per hundred pounds.  Price f. o. b. cars New York, July shipment from Europe, as early as possible delivery in August in New York, maybe on the fifth.

He also claims that pursuant to the terms of the alleged contract, he was ready, willing and able to ship to the defendant crimson clover seed in the quantity, of the kind, at the price, and at the time agreed upon and that the defendant's cancellation of the order prevented him from fulfilling his part of the contract, and by reason of the cancellation he, the plaintiff, offered for sale and sold the same two hundred bales of seed in the open market at the highest market price he could obtain for them.

The plaintiff claims for his damages the sum of eleven hundred and thirty-three dollars and fifty-six cents with interest thereon from August seventeenth, A. D. 1912.

On behalf of the defendant it is denied that the contract as alleged by the plaintiff was entered into, and it is claimed that the plaintiff and defendant did not reach an agreement as to terms of purchase and sale of the clover seed and by reason thereof the parties did not enter into a contract, and that none existed between them at the time. It is also claimed by the defendant that it offered to purchase from the plaintiff two hundred bags strictly prime imported scarlet clover 1912 crop f. o. b. cars New York August fifth, at eight dollars and fifty cents per hundred pounds, and if there was any agreement of sale between the parties to this action, it was the agreement by the plaintiff to those terms offered by the defendant.

Much of this controversy arises over the diverse contentions of the plaintiff and the defendant in respect to the meaning of the language employed in the telegram sent by the defendant to the plaintiff on June fifteenth. The plaintiff contending that it was an acceptance on the part of the defendant of the terms of the telegram previously received on the same day by the defendant, and if such was not the case then it was the duty of the defendant to reply to the telegram and letter of June seventeenth, in which the plaintiff set forth the terms as he understood them, and by reason of its failure to reply to these communications and remaining silent it was in legal effect an acceptance by the defendant of the terms as therein expressed, and according to these terms the delivery was to be made in New York City as early in August as possible.

The defendant disputes this and contends that its telegram dated June fifteenth was an acceptance of the price set forth in the plaintiff's telegram dated June fifteenth, and the terms of the corporation's letter dated June thirteenth, under which terms delivery was to be made in New York City on August fifth, and if such was not the understanding of the plaintiff, then the minds of the parties did not meet and there was no contract between them.

We have not in the above statement attempted to give you all the claims and contentions of the parties to this action, but have only endeavored to give you a substantial understanding of the controversy.

Whether or not the contract as alleged by the plaintiff, was under all the facts and circumstances entered into between the parties to this action, we are going to submit to you for your determination upon your consideration of all the evidence in the case in connection with the law as we shall state it to you. *Rogers v. Fenimore* (*Del. Super.* 1898) 41 *Atl.* 886.

[2]   A contract has been defined to be an agreement between two or more parties for a sufficient consideration to do or not to do a particular thing.  While it might be necessary at times to give a more detailed definition of a contract, we think the above a sufficient one for the purpose of the present case.

[3]   Agreement is one of the necessary essentials of a contract and means the meeting of the minds of the parties to the contract in the same intention, and in this case, before you can find that a contract resulted from the negotiations of the parties, you must find that the minds of the parties met in the same intention, that is, both parties agreed that the seed was to be delivered by the plaintiff to the defendant in New York as early as possible maybe on the fifth of August, and *not* necessarily on the fifth. If the defendant understood or from the letters, telegrams and other evidence reasonably might have understood that the seed was to be delivered in New York on the fifth of August, then the minds of the parties did not meet and you should find for the defendant.

[4] When goods subject to trade fluctuations in price are the subject of a mercantile contract, time is of the essence of the contract.

[5, 6] Where one party makes a definite offer for the sale of a commodity before a contract results therefrom, there must be an acceptance of the offer, by the other party, absolute and identical with the terms of the offer.

Ordinarily silence on the part of the party to whom the offer is made will not constitute an acceptance, but there may be instances where under all the facts and circumstances there is a duty imposed by law on the part of the party receiving the offer, to inform the person making the offer that the same is not accepted, and when this legal duty is found to exist, a failure in its performance will result in a contract equally binding on both parties.

Where there is an agreement and the language of the agreement is doubtful in meaning, that meaning is to prevail against either party which he knew or had reason to believe that the other party understood it.

If you should believe from all the evidence, that under all the facts and circumstances there was a duty upon the defendant to communicate to the plaintiff the fact that it did not accept the terms contained in the plaintiff's telegram and letter dated June seventeenth, and it failed in this duty, then you may find that the parties to the action did enter into the contract sued upon in this action.

[7] It is your duty to consider along with the other evidence, the language contained in the communications of the seventeenth, also the conduct of the parties and what was said between them on the occasion of the visit of the corporation's president to the New York offices of the plaintiff in August as well as the language of the telegram of cancellation.

If after considering all the evidence in the case you should find under the law, as we have stated it to you, that the minds of the parties to this action did meet in an agreement for the delivery of the seed in question in the quantity, of the quality, and at the price, stipulated f. o. b. cars New York as early in August as possible, then you should find that the alleged contract

was entered into between the parties. If on the other hand you should find that the parties did not so agree, then we will say to you that there was not a meeting of minds of the parties and there was no subsisting contract between them, in which case it is your duty to find a verdict in favor of the defendant.

If after considering the evidence in the case you should find that the parties did not enter into contractual relation, such as alleged by the plaintiff, it is not necessary for you to further consider the case, for under such a finding your verdict should be for the defendant. If you should find that the parties did enter into the plaintiff's alleged contract it is then your duty to further consider the evidence to ascertain the amount of damages, if any, the plaintiff is entitled to.

[8] If you should find that the alleged contract did exist between the parties then under the terms of that contract, the plaintiff sold to the defendant and the defendant bought from the plaintiff two hundred sacks German crimson clover seed strictly prime imported 1912 crop at eight dollars and fifty cents per hundred pounds. This price was f. o. b. cars New York and the seed was to be shipped from Europe during the month of July and was to be delivered as early as possible in August, and under the terms he was not required to make the delivery on the fifth day of August.

For the plaintiff to recover he must show by a preponderance of the evidence, his readiness, willingness and ability to perform the contract in strict accord with the terms thereof as we have interpreted them to you.

[9] The telegram of August 8, 1912, was a positive rescission of the contract, if any was entered into, and upon the receipt of the same by the plaintiff he had the right, in law, to resell within a reasonable time the seed which had been sold to the defendant, for the best market price he could obtain for it, under all the circumstances.

If you should find the existence of the contract as relied upon by the plaintiff, and if you should further find from the evidence that German Crimson clover seed is by the trade graded as to quality and the plaintiff was not able, and willing to deliver to

the defendant, under the terms of the contract, the quality of seed he contracted to deliver to the defendant, then he cannot recover, but if you should find that the plaintiff was able and willing to deliver the seed as contracted for, and damages resulted to him by reason of the defendant cancelling the contract, your verdict should be in favor of the plaintiff.

[10] For the plaintiff to recover you must believe that the preponderance of the evidence is on his side and by a preponderance is meant the greater weight of the evidence. In your determination of the case it is your duty to consider all the evidence and not to be influenced by any favor or prejudice you may have.

[11] If you should find for the plaintiff, your verdict should be for such a sum as will compensate him for any loss he may have sustained by reason of the rescission of the contract by the defendant, with interest thereon from the seventeenth day of August, 1912, the basis of the damages, if any, being the difference between the price of the seed sold to the defendant and the price obtained therefor on a resale by the plaintiff, and in considering the question of damages you may take into consideration any reasonable expenses occasioned the plaintiff by the resale of the seed, as the same may appear from the evidence.

If you should find that the minds of the parties did not meet in agreement in the contract sued upon in this case, your verdict should be for the defendant.

<div align="right">Verdict for the defendant.</div>