SUPERIOR TUBE CO. v. DELAWARE AIRCRAFT INDUSTRIES, Inc.

Civil Action No. 415.

District Court, D. Delaware.

May 18, 1945.

See also 4 F.R.D. 139.

C. R. Layton, 3rd, of Wilmington, Del. (of Hastings, Stockly and Layton, of Wilmington, Del.), for plaintiff.

Ivan Culbertson, of Wilmington, Del., and Michael F. Donnelly, of Philadelphia, Pa., for defendant.

LEAHY, District Judge.

1. Plaintiff, a Pennsylvania corporation, had 9575 pounds of beryllium copper in the form of billets which were to be manufactured into bourdon tubes. Certain preliminary machining and polishing work had to be performed upon the billets before they could be subjected to further processes of manufacture in plaintiff's plant. As plaintiff was operating at capacity, it was unable to do the preliminary machining and polishing work upon all the billets. It, therefore, subcontracted 219 billets (3591 pounds) to defendant for machining and polishing in accordance with plaintiff's specifications.

2. In order to ascertain whether defendant was capable of performing the subcontract, plaintiff supplied it with two samples of beryllium copper billets. Defendant proceeded to machine in accordance with specifications. One met specifications. One failed to meet specifications. As to the billet which failed to meet specifications, defendant explained that this was due to the setting up of its machinery for the job but that after adjustments were made it would be able to undertake the contract. Plaintiff then shipped to defendant the 219 billets.

3. Defendant undertook the machining and polishing of the 219 beryllium copper billets. When they were returned to plaintiff's plant, they were measured and otherwise checked. It was found that none of the billets came within plaintiff's specifications.

4. Subsequent efforts of defendant to machine the billets within specifications completely failed. The billets machined by defendant came so far from meeting plaintiff's specifications that they were rendered practically valueless.

5. The billets when sent to defendant's plant were identical in form, texture and composition with the two sample billets which had previously been machined by defendant.

6. The cost of the billets to plaintiff was $1.50 per pound, which for 3591 pounds amounted to $5386.50. In addition to this cost, plaintiff also performed certain preliminary labor upon the billets by way of cutting them in two which increased the expense of said billets to plaintiff by 2¢ per pound. The only purpose for which said billets could be used as a result of the improper machining work done upon them by defendant was for scrap. The scrap value of the billets was 12¢ per pound. Damage to plaintiff as a result of the improper machining work done by plaintiff

574

was the value of said billets at $1.50 per pound, plus 2¢ per pound for additional preparatory work done by plaintiff minus the scrap value of 12¢ per pound. The net damage to plaintiff as a result of defendant's inability to perform its contract was $5027.40.

As shown by the findings of fact, this is an action for breach of contract. The issue is simple.

█ Defendant tried twice to machine the billets. In each instance it failed to machine and polish in accordance with specifications. The defense is that the 219 billets were of unequal metallurgical composition and it was impossible to machine and polish within the specifications. This defense must be rejected in the light of plaintiff's own successful processing of about two-thirds of the billets making up this particular order. The billets came from the same stock pile. Plaintiff successfully processed 5984 pounds of the material. Defendant failed with the 3591 pounds which had been subcontracted to it. It is clear defendant was incapable and lacked proper facilities and skilled workmen to do the job it had agreed to do.

There is one circumstance in the case at bar which has high significance. When defendant returned the billets to plaintiff, certain of them were measured at the ends and found to be within specifications. But when these billets were sectioned or cut in pieces and then measured, it was discovered that the wall thicknesses at the newly cut ends did not meet specifications. There was evidence which indicates that special

work was done on the ends of the billets alone. It is a fair inference to draw that defendant, aware of its inability to machine the billets within specifications and realizing that the accepted test for determination of whether specifications had been met was to caliper only the ends of the billets by a micrometer, set about to disguise its inability to perform its contract.

Plaintiff asks as part of its damages interest on the sum of $5027.40 from April 10, 1944.

█ Under Delaware law interest is a part of damages to which a plaintiff is entitled as of right in order that he may be made whole—that is to say, in order to give him that full compensation to which the law says he is entitled for a wrong suffered by him. In this matter, the Delaware cases speak too clearly to admit of mistake. They show that the award of interest is not left to the election or discretion of the jury,[1] but that it follows as a matter of law as an incident to the award of the principal sum.

We so state after examination of every published volume of the Delaware reports. In case after case, down to and including the most recently reported ones, the Delaware courts have given the jury binding instructions that if the plaintiff was entitled to recover damages, he was also entitled to have interest thereon included in the verdict; and in none of those cases was the allowance of interest left in the discretion of the jury. The cases to which we refer include suits in contract and quasi-contract,[2] tort

[1] The case at bar was tried to the court without a jury. As the court must make the award, it is bound by the Delaware law the same as a jury would be in ascertaining damages.

[2] Lattomus v. F. M. F. I. Co., 1867, 3 Houst. 404, insurance; Carman et al. v. Scribner, 1867, 3 Houst. 554, sale; McKenney v. Diamond State Loan Ass'n, 1889, 8 Houst. 557, 18 A. 905, building association contract; Levy v. Gillis, 1897, 1 Pennewill, 119, 39 A. 785, quasi-contract; Fraser v. Ross, 1898, 1 Pennewill 348, 41 A. 204, sale; Leonard v. Johnson Forge Co., 1900, 3 Pennewill 104, 50 A. 541, sale; Love v. Barnesville Mfg. Co., 1901, 3 Pennewill 152, 50 A. 536, sale; Mauck v. M. & M. Fire Ins. Co., 1903, 4 Pennewill 325, 54 A. 952, insurance; Schilansky v. M. & M. Fire Ins. Co., 1903, 4 Pennewill 293, 55 A. 1014, insurance; Jester & McDaniel v. Knotts,

1904, 7 Boyce 350, 57 A. 1094, sale; Lodge v. Fraim, 1905, 5 Pennewill 352, 63 A. 233, services; Collins v. Tigner, 1905, 5 Pennewill 345, 60 A. 978, sale; Reed v. Continental Ins. Co., 1906, 6 Pennewill 204, 65 A. 569, insurance; Adkins & Co. v. Campbell, 1906, 6 Pennewill 96, 64 A. 628, sale; Coverdale v. Rickards & Watson, 1907, 6 Pennewill 467, 69 A. 1065, sale; Joseph v. Johnson's Executors, 1908, 7 Pennewill 468, 82 A. 30, services; Moline Jewelry Co. v. Otwell, Lowe & Tull, 1910, 2 Boyce 129, 78 A. 300, sale; Morrow v. Frankish, 1913, 4 Boyce 534, 89 A. 740, loan; Keatley v. Grand Fraternity, 1911, 2 Boyce 511, 82 A. 294, insurance; Weishut v. Layton, 1915, 5 Boyce 364, 93 A. 1057, rescission of sale; Morgan Millwork Co. v. Dover Garage Co., 1919, 7 Boyce 383, 108 A. 62, bailment; State of Delaware v. Stidham, 1920, 1 W.W.

cases,[3] and property actions.[4] In all of them, the interest involved was moratory interest. In some of them the damages claimed were liquidated, in others they were unliquidated. In each of them the Delaware Court gave binding instructions to the jury that if the plaintiff was entitled to recover a principal amount, then he was equally entitled, as a matter of law, to recover interest thereon—from the date of breach in the contract cases, from the date of wrong in the tort cases, and from the date of unlawful taking in the property cases. The juries had no more discretion in these cases in respect of allowing or refusing interest, than they had in respect of allowing or refusing the principal amounts sued for, or any part thereof.[5]

All these cases—there are 41 of them— but exemplify the recognition in Delaware of the fundamental rule of compensation that the allowance of interest is in the nature of damages and as much of an injured plaintiff's substantive right as the right to the damages themselves. The earliest of them goes back to 1849; the latest of them was decided in 1939. As lately as 1936 the present Chief Justice of Delaware recognized the substantive right to interest and applied it in the case of Drew & Co. v. Southern Groceries Stores, Inc., 7 W.W.Harr. 355, 183 A. 511, which was tried before him without a jury.

The conclusions in plaintiff's favor are:

1. There is diversity of citizenship and the amount involved exceeds the jurisdictional amount.

2. Defendant entered into a valid contract with plaintiff whereby it undertook to machine 219 beryllium copper billets for plaintiff in accordance with certain specifications laid down by plaintiff.

3. Defendant's failure to machine the 219 beryllium copper billets in accordance with plaintiff's specifications constituted a breach of contract for which defendant is liable to plaintiff in damages.

4. The measure of damages is the value of the beryllium copper billets immediately before and immediately after they were machined by defendant.

5. Plaintiff's damages consist of the cost of said beryllium copper billets together with the cost of additional labor performed on said billets by plaintiff less the scrap value of said billets, together with interest at six per cent from April 10, 1944, the date of breach.

Harr. 8, 110 A. 680, sheriff bond; Graham v. Nat'l Bank of Smyrna, 1923, 2 W.W.Harr. 264, 265, 122 A. 85, money had and received; May v. Howell, 1923, 2 W.W.Harr. 221, 121 A. 650, services; Brooks Transportation Co. v. Merchants' Mutual Casualty Co., 1933, 6 W.W.Harr. 40, 171 A. 207, insurance; State of Delaware v. Massachusetts Bonding & Ins. Co., 1939, 1 Terry 274, 9 A.2d 77, balance due on sale of goods.

[3] Vaughan v. Webster, 1849, 5 Har. 256, trover; Hargadine v. Ford, 1877, 5 Houst. 380, trover; Russell v. Stoeckel, 1879, 5 Houst. 464, trover; Kirkley v. Lacey, 1885, 7 Houst. 213, 30 A. 994, conversion; Boulden v. Gough, 1902, 4 Pennewill 48, 54 A. 693, trover; Williams v. Armour Car Lines, 1906, 7 Pennewill 275, 79 A. 919, damages to goods in transit; Klair & Hollingsworth v. P., B. & W. R. R. Co., 1910, 2 Boyce 274, 78 A. 1085, negligence; Keith Co. v. Booth Fisheries Co., 1913, 4 Boyce 218, 87 A. 715, negligence; Dickerson v. Brittingham, 1913, 4 Boyce 93, 86 A. 106, negligence; Union Stone Co. v. Wilmington Transfer Co., 1914, 5 Boyce 59, 90 A.

407, negligence. The rule in these tort cases naturally applies to those torts where to use the language of Mr. Justice Holmes in Jones v. United States, 258 U.S. 40, 49, 42 S.Ct. 218, 220, 66 L.Ed. 453, "the wrong consists of depriving the owner of property having a definite or ascertainable value," because in those cases "there would seem to be the same reason for allowing interest as if there had been a misappropriation of money." *It does not apply*, of course, to that class of torts which comes within the wholly different category of personal injuries, defamation, alienation of affections, etc., where it is readily seen that a different problem is presented.

[4] Staunton v. Smith, 1906, 6 Pennewill 193, 65 A. 593; Hitch v. Riggin, 1911, 3 Boyce 84, 80 A. 975, replevin; Reynolds v. Donaway, 1919, 7 Boyce 461, 108 A. 139, replevin.

[5] If in any of these cases the jury had found for the plaintiff, but had refused to include interest in their verdict, it would have been a violation of their instructions, correctable by the Court upon appropriate motion for an additur.