# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ELSA DENISSE GARCIA-RIVERA, )
)
    Plaintiff, )
)
    v. )    C.A. No.:  N18C-09-142 SKR
)
WILLIAM K. GOTTSCHALL, )
)
    Defendant. )

Date Submitted: November 8, 2022
Date Decided: December 7, 2022

*Opinion*
*Upon Consideration of Plaintiff's Motion for a New Trial*
**DEFERRED.**
*and Defendant's Motion for Costs*
**DENIED.**

*Benjamin Schwartz, Esquire*, Schwartz & Schwartz, 1140 South State Street, Dover, Delaware 19901.

*Kenneth Doss, Esquire*, Casarino, Christman, Shalk, Ransom, & Doss, 1007 North Orange Street, Suite 1100, Wilmington, Delaware 19899.

**RENNIE, J.**

## INTRODUCTION

The motions before the Court stem from a "zero verdict." After a September 19, 2016 rear-end collision, Plaintiff, Elsa Denisse Garcia-Rivera, suffered injury to her lower thoracic spine and re-aggravation of a pre-existing upper spine injury. The matter was tried before a jury on August 23-25, 2021. At the close of Defendant William K. Gottschall's case in chief, Ms. Garcia-Rivera moved for judgment as a matter of law as to liability, causation, and damages stemming from the accident. The Court granted the motion. The August 2021 trial ultimately resulted in a hung jury.

The parties re-tried the case before a jury on October 31-November 1, 2022. At retrial, the Court's prior issuance of judgment as a matter of law controlled as the law of the case. The only task left for the jury was to determine whether Ms. Garcia-Rivera's injury was: (1) a lumbar disc injury, as per the testimony of her treating spinal surgeon, Dr. James Zaslavsky, or (2) a lower thoracic sprain/strain injury, as Dr. Lawrence Piccioni, Mr. Gottschall's expert, testified.

It follows, then, that the jury was to award *some* amount of compensation to Ms. Garcia-Rivera. Nevertheless, the jury returned a verdict of $0. Because of the "zero verdict," Ms. Garcia-Rivera seeks a new trial. Meanwhile, as the prevailing party, Mr. Gottschall seeks costs, or, in the alternative, additur, based on Ms. Garcia-Rivera's having rejected an offer of judgment. For the reasons below, Ms. Garcia-

2

Rivera's Motion for a New Trial is **DEFERRED**.  Mr. Gottschall's Motion for Costs

is **DENIED**.

## FACTUAL BACKGROUND

What follows is an abbreviated factual summary of the case, drawing only on

those undisputed facts relevant to the motion.  As noted *supra*, the retrial focused on

damages.  Ms. Garcia-Rivera had a history of back problems, so the main contention

was whether the rear-end collision exacerbated those conditions.  As to that issue,

the parties argued over the extent to which the accident attributed to Ms. Garcia-

Rivera's post-accident medical bills.  The parties stipulated that the bills totaled

$24,345.40.  Mr. Gottschall disagreed, however, that: (1) the medical bills

proximately resulted from his negligence, and (2) the medical bills were reasonably

necessary for Ms. Garcia-Rivera's medical treatment.

The retrial jury heard Ms. Garcia-Rivera's treating spinal surgeon opine that

the collision precipitated her lumbar disc injury.  It also heard Dr. Piccioni, Mr.

Gottschall's medical expert, disagree with this diagnosis.  Dr. Piccioni did, however,

concede that Ms. Garcia-Rivera suffered a new injury as a result of the accident:

> Well, certainly, by review of the records, [Ms. Garcia-Rivera] suffered a *new* lumbar – excuse me – a *new* thoracic sprain in areas that were not [previously injured] and a re-aggravation of some of the areas which she was already being treated for.  Obviously, *that's based strictly on the records*.  Dr. Leitzke . . . was pretty fastidious in his

3

note of September 21st to put that into it, that the *new injury* was in T7 and T9, just below the T6 . . . .[1]

And Dr. Piccioni reaffirmed his position during cross examination:

> [PLAINTIFF COUNSEL]: . . . So, sir, is it your expert opinion, within a reasonable degree of medical probability, that Ms. Elsa Garcia sustained a lower thoracic injury *as a direct result* of the . . . September 19, 2016, motor vehicle collision, which was caused by [Mr. Gottschall]?
>
> [DR. PICCIONI]: Yes.
>
> [PLAINTIFF COUNSEL]: Further . . . we can agree a lower thoracic injury – it's a back injury. Right? It's a portion of the spine?
>
> [DR. PICCIONI]: That is correct. Yes.
>
> [PLAINTIFF COUNSEL]: Further, it's your expert opinion, again with a reasonable degree of medical probability, that Ms. Garcia-Rivera's treatment from September 21st of 2016, when she first saw Dr. Leitzke, through December of 2016 was reasonable and necessary as a result of the car accident caused by [Mr. Gottschall]?
>
> [DR. PICCIONI]: Yes.[2]

Based on Dr. Piccioni's concession, the Court instructed the jury to award Ms. Garcia-Rivera an amount reflective of the reasonable and necessary medical treatment she received as a proximate result of Mr. Gottschall's negligence. The

[1] Piccioni Dep. 31-32.
[2] Piccioni Dep. 44-45.

jury returned a zero verdict. Ms. Garcia-Rivera filed the motion at bar shortly thereafter.

## STANDARD OF REVIEW

It goes without citation that a jury's verdict is given great deference. Accordingly, a jury verdict should be set aside only where it is clear the award is so grossly out of proportion to the injuries suffered that it shocks the court's conscience and sense of justice.[3] When supported by sufficient evidence, a jury's verdict will not be disturbed by granting additur or a new trial.[4] If the jury's award is divorced from the evidence presented, the Court may, in its discretion, correct the error.[5] Under this standard of review, the Delaware Supreme Court has found zero verdicts to be inadequate as a matter of law when uncontradicted medical testimony establishes a causal link between an accident and injuries sustained.[6]

## ANALYSIS

*A. The Zero Verdict*

With the above in mind, the Court must adhere to the Delaware Supreme Court's holdings in *Maier v. Santucci*[7] and *Amalfitano v. Baker*.[8] In *Maier*, the

---

[3] *See Young v. Frase*, 702 A.2d 1234, 1236 (Del. 1997).
[4] *See Lyon ex rel. Denmon v. Cline*, 2005 WL 628030 (Del. Super. March 16, 2005).
[5] *See Bradshaw v. Trover*, 1999 WL 1427770 (Del. Super. Oct. 27, 1999).
[6] *See Maier v. Santucci*, 697 A.2d 747, 749 (Del. 1997).
[7] *Id.*
[8] 794 A.2d 575 (2001).

defense medical expert concluded that the "[Plaintiff] did probably sustain a cervical sprain injury as a result of the accident."[9] *Maier* held:

> Once the existence of an injury has been established as causally related to the accident, a jury is required to return a verdict of at least minimal damages.[10]

In *Amalfitano*, the plaintiff called two medical experts who "testified that it was their opinion, based on both Amalfitano's subjective complaints *and the results of objective tests*, the . . . accident proximately caused [plaintiff]'s injuries."[11] Those expert opinions were unchallenged by the defense. Refusing to accept a zero damages verdict, *Amalfitano* concluded:

> Despite the general deference of our courts to the findings of a jury, we held in *Maier v. Santucci* that a verdict of zero damages is inadequate and unacceptable as a matter of law where uncontradicted medical testimony establishes a causal link between an accident and injuries sustained.[12]

So the law is clear.

Here, in contrast with *Maier* and *Amalfitano*, Ms. Garcia-Rivera's injuries were not established conclusively by objective symptoms. Even so, as presented above, Mr. Gottschall's own expert concluded that the accident caused a spinal

---

[9] *See id.* at 575.
[10] *See id.* at 749.
[11] *See id.* at 576.
[12] *Id.* at 577.

injury.  To the limited extent Mr. Gottschall's expert agreed with Ms. Garcia-Rivera's expert, that left Mr. Gottschall's expert's opinion uncontradicted.

After deliberation and presumably with the full damage instructions in mind, the jury found for Mr. Gottschall and returned a verdict of $0.  But in light of *Maier* and *Amalfitano*, it is inescapable that after the Court granted judgment as a matter of law on liability, causation, and damages, Ms. Garcia-Rivera was entitled to some damages.  And the jury should have awarded accordingly.  The Court will **GRANT** a new trial if additur is not accepted.

### B. Additur

Additur, and its older, more well-developed counterpart, remittitur, are recognized in Delaware.  Former-Judge Quillen remains this Court's most respected authority on additur.  In *Hall v. Dorsey*,[13] he explained:

> The practice of additur is nothing more than making the denial of a plaintiff's motion for a new trial on the issue of damages contingent upon the defendant's willingness to accept a higher award.  Additur in Delaware is appropriate when the award "is so grossly out of proportion to the injuries suffered as to shock the Court's conscience and sense of justice."  A zero verdict in the face of compensable damages is perhaps more disproportionately striking than a small award because it is even more facially inadequate as a matter of law.  As a result, an additur of a zero verdict, as a matter of reason, is certainly appropriate

---

[13] 1998 WL 960774 (Del. Super. Nov. 5, 1995).

in the face of conclusive damages (damages as a matter of law).[14]

As Judge Quillen instructed in *Carney v. Preston*,[15] the premise for additur is that there is a lawful range for every verdict. Additur is a tool employed by the Court to bring an unjustifiably low verdict up to the bottom of that range. By doing so, "tribute is still paid to the very jury whose verdict is being set aside."[16]

The jury's view of damages in this case was clear. Undoubtedly, the jury saw Ms. Garcia-Rivera's damages as unproven or not worth compensation. Taking its view of the case into consideration, it is almost certain the jury would have returned a verdict of next to nothing if the Court had instructed it to award damages. The verdict can only be read to mean that the jury intended to award Ms. Garcia-Rivera the least that the law would allow, and, literally, not a dollar more. Additur is clearly the mechanism by which the Court can reconcile the verdict with the law on damages and simultaneously respect the jury's well-considered view of the evidence.

Moreover, the Court has little reason to question the sincerity of Ms. Garcia-Rivera's injuries. The jury most likely ignored her health woes because it did not agree that the accident with Mr. Gottschall caused them. That being said, as with the plaintiff in *Hall*, Ms. Garcia-Rivera undisputedly suffered from post-accident

---

[14] *See id.* at *3.
[15] 683 A.2d 47 (Del. Super. 1996).
[16] *Id.* at 56.

8

pain. Considering that the *Hall* plaintiff missed two months of work and was required to wear a neck brace, Judge Quillen concluded that given the "modest injuries, . . . an award of 2,500 seems appropriate."[17] Here, Ms. Garcia-Rivera suffered from spinal pain for at least three months as a result of the accident. The Court sees the lowest sustainable damage award as $5,000, without costs.

In closing, the Court understands Ms. Garcia-Rivera presented evidence that, if believed, would have supported a much larger award. Unfortunately for her, the jury indisputably saw the evidence in a different light. The Court is confident that allowing Ms. Garcia-Rivera to testify in more florid terms, re-instructing the jury, and telling the jury it had to award damages would not have overcome the fact that Ms. Garcia-Rivera had a voluminous amount of health complaints apart from the accident. More importantly, the Court has no reason to believe that another jury, hearing the same evidence presented here, would return a verdict remotely approaching the value that Ms. Garcia-Rivera places on her case.

## CONCLUSION

For the foregoing reasons, if Mr. Gottschall agrees in a written filing, within 30 days, to accept additur in the amount of $5,000 and bear his own costs, the Court will **DENY** Ms. Garcia-Rivera's motion for a new trial. Otherwise, the Court will

---

[17] *See Hall*, 1998 WL 960774, at *7.

9

enter an order **GRANTING** a new trial.  No further consideration of Mr. Gottschall's motion for costs is necessary.  That motion is accordingly **DENIED**.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge