Michele J. REID, Plaintiff Below, Appellant,

v.

Michelle A. HINDT and Daisy Construction Company, a Delaware Corporation, Defendants Below, Appellees.

Daisy Construction Company, a Delaware Corporation, Defendant/Third–Party Plaintiff Below, Appellee/Cross–Appellant,

v.

Highway Traffic Controllers, Third–Party Defendant Below, Cross–Appellee.

No. 408, 2008.

Supreme Court of Delaware.

Submitted: April 29, 2009.
Decided: July 9, 2009.
Revised: Aug. 26, 2009.

William D. Fletcher, Jr., Esquire (argued), B. Brian Brittingham, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware for Plaintiff Below, Appellant Michele J. Reid.

Jeffrey A. Young, Esquire, (argued) Young & McNelis, Dover, Delaware for Defendant Below, Appellee Michelle A. Hindt.

Sherry Ruggiero Fallon, Esquire, (argued) Tybout, Redfearn & Pell, Wilmington, Delaware for Defendant/Third Party Plaintiff Below, Appellee/Cross Appellant Daisy Construction Company.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice.

In this appeal we consider whether the trial court violated plaintiff's right to a jury trial by granting defendant's motion for additur after a jury award of zero damages in a personal injury action. Appellant, plaintiff below, had moved for a new trial, and opposed the additur motion. Nonetheless, the Superior Court awarded $2,500 in additur, and gave defendant the option of consenting to the award in lieu of a new trial. Although typically plaintiffs move for additur and defendants move for remittitur, either party may seek that relief, or the trial court may impose additur or remittitur *sua sponte*. The right to a jury trial only requires that defendant consent to additur and plaintiff consent to remittitur. The trial court satisfied that requirement and awarded plaintiff a reasonable amount, given the nature of the injuries sustained. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 1999, Michele Reid was involved in a multiple car collision in the left lane of northbound U.S. Route 13. At the time of the accident, Daisy Construction Company ("Daisy") was working in that area, having contracted with the Delaware Department of Transportation ("DelDOT") to make improvements on the road. Because of the construction, the right lane of northbound Route 13 was blocked off by at least five cones. In addition, signs alerted drivers to slow down, and at least one flagger was guiding traffic approaching the lane closure. Daisy's contract with DelDOT required Daisy to provide cones and at least two flaggers to oversee safe movement of traffic. To meet this obligation, Daisy subcontracted with Highway Traffic Controllers ("Highway") to provide flaggers at the construction site.

The accident occurred shortly after William Maher came to a stop in the left lane at the construction site. Reid, who was in the car behind Maher, slammed on her brakes and managed to avoid hitting Maher. Michelle Hindt, who was traveling behind Reid, failed to stop and collided with Reid. The impact from Hindt's car propelled Reid's car into Maher's vehicle. The collision also caused Reid's car to spin around. As a result, Reid's car also was hit in the front by Hindt's car. After the accident, Reid was able to exit the vehicle herself, but she was taken to Kent General Hospital by ambulance. At the hospital, Reid complained of upper chest discomfort, neck, back, and hip pain. But, x-rays and electrocardiograms provided no evidence of injury.

Approximately two weeks after the accident, Dr. Richard DuShuttle examined Reid and found that she had muscle spasms in her trapezius. He determined that she was suffering from cervical strain, lumbar strain, and bilateral trapezius tenderness. DuShuttle prescribed physical therapy and medications. Later in November, during an evaluation at the physical therapist's office, there was another objective finding of muscle spasms. In December 2000, DuShuttle referred Reid

to Dr. Sami Moufawad, who found that she suffered from muscle spasms and that she had pain and trigger points around her shoulder blades. Moufawad concluded that Reid suffered from myofascial pain syndrome in the shoulder and lumbo-sacral area, as well as mild lumbar spondylosis. It does not appear that any of these additional diagnoses result from objective findings of injury.

Reid filed suit against Hindt alleging that her negligence caused the automobile accident and proximately caused her injuries. Reid also sued Daisy, alleging that it failed to warn drivers of the hazardous condition on the road and that it should have had more cones and at least two flaggers on location, as required by its contract with the DelDOT. Reid claims these failures also were a proximate cause of the accident. Daisy, in turn, filed a third-party complaint against Highway.

Before the first trial, the Superior Court granted summary judgment in favor of both Daisy and Highway. The trial court concluded that "[e]ven if there were less than two flaggers on the site and even if the line of cones was unusually short, a jury could not, on the record of this case, conclude by a preponderance of the evidence that these factors, or any other acts or omissions by Daisy, were a proximate cause of the accident."[1] In September 2005, Reid proceeded to trial on her remaining claims. Hindt admitted liability, so the only issue for the jury was damages. DuShuttle testified that Reid suffered from muscle spasms in the trapezius, as well as cervical strain, muscle and ligament injuries. DuShuttle concluded that the automobile accident on November 5, 1999, caused her injuries.

Hindt did not offer any medical evidence to controvert DuShuttle's medical opinion. Instead, Hindt challenged Reid's credibility and the extent of her injuries. Reid admitted that she had been in two other automobile accidents after the accident with Hindt, but claimed that she sustained no injuries from those other accidents. DuShuttle also cast doubt on Reid's claim. He testified that, within a few months after the accident, Reid was "right where she should be," and that, when she contacted his office in February 2000, Reid told him that she had fallen and reinjured her back.[2]

The trial court instructed the jury to determine the amount of compensation for Reid's injuries proximately caused by the automobile accident. Despite the uncontradicted medical evidence that Reid suffered some injury, the jury awarded zero dollars. The Superior Court granted Reid's motion for a new trial, and denied Hindt's request that the court award additur. At the second trial, neither party presented any new evidence, and the jury again returned a zero verdict.

Reid and Hindt repeated their applications for a new trial and additur, respectively. This time the trial court concluded that additur was the appropriate remedy, and found that $2,500 was the "absolute minimum amount that the record requires."[3] The trial court held that Reid would receive a new trial unless Hindt agreed to pay the additur. After Hindt agreed to the additur, Reid moved for reargument, claiming that the trial court had deprived her of her right to a jury

1. *Reid v. Hindt,* 2005 WL 2143706 at *2 (Del.Super.).

2. *Reid v. Hindt,* 2006 WL 1148819 at *1 (Del.Super.).

3. *Murphy v. Thomas,* 2002 WL 1316242 at *1 (Del.Supr.).

trial. The trial court denied the motion for reargument and this appeal followed.

## DISCUSSION

 Reid argues that she was denied her right to trial by jury when the trial court granted Hindt's motion for additur over her objection. She contends that the trial court impermissibly invaded the fact-finding province of the jury, thereby violating Article IV, Section 19 of the Delaware Constitution. According to Reid, when a plaintiff moves for a new trial or additur, the plaintiff implicitly waives her right to trial by jury and agrees to allow the trial judge to determine the amount of additional damages the defendant must pay. If the defendant does not consent to the additur, the plaintiff is entitled to a new trial. Where, as here, the defendant moves for additur, the plaintiff has not waived her right to a jury trial. Therefore, according to Reid, the plaintiff must be given the option to accept the additur or have a new trial. We review this claimed constitutional violation *de novo*.[4]

Delaware, like other jurisdictions, has a long history of using additur[5] and remittitur[6] to adjust jury verdicts. In *Rudnick v. Jacobs*[7], this Court held that it did not violate a plaintiff's right to trial by jury when a trial court *sua sponte* gave the defendant the option to accept additur for medical bills. Rudnick had been injured in a car accident, and sought compensation for damage to his car, medical bills, and pain and suffering. The jury fully compensated Rudnick for the damage to his car, awarded all but $16 for medical expenses, and awarded nothing for personal injuries. The trial court denied Rudnick's motion for a new trial. Instead, with defendant's consent, the trial court awarded $16 in additur.

On appeal, this Court upheld the zero verdict for personal injuries, noting that all the evidence on that claim was subjective. With regard to the medical bills, the *Rudnick* Court determined it was proper for the trial judge to add $16 to the jury verdict because it was merely adding "a definite, calculable item [that] was erroneously omitted."[8] The *Rudnick* Court rested its decision on the fact that the additur involved only liquidated amounts:

> [T]he verdict in effect reduced the plaintiff's claim to one for the recovery of definite, pecuniary sums which are demonstrably calculable to a penny. In such a case, there can be no possible injury to the plaintiff if the court should direct an additur sufficient to cover the utmost of his claims. The jury could not properly have allowed him more. As the defendant has consented to the increase, he of course cannot be heard to object.
>
> * * *
>
> We can see no reason why parties should be put to the expense and annoyance of a new trial when the only purpose of such trial could be to have a jury

---

4. *Hall v. State*, 788 A.2d 118, 123 (Del.2001).

5. Additur is "[a] trial court's order, issued usually with the defendant's consent, that increases the damages awarded by the jury to avoid a new trial on grounds of inadequate damages. The term may also refer to the increase itself, the procedure, or the court's power to make the order." Black's Law Dictionary 39 (7th ed. 1999).

6. Remittitur has been defined as "[t]he process by which a court reduces or proposes to reduce the damages awarded in a jury verdict." Black's Law Dictionary 1298 (7th ed. 1999).

7. *Rudnick v. Jacobs*, 197 A. 381 (Del.1938).

8. *Id.* at 384.

make a calculation which a former one should have made and which the court is equally competent to make.[9]

*Rudnick* expressly declined to address the constitutionality of additur in cases involving unliquidated damages, but the Court noted that, in such cases, "there is more room to contend that the province of the jury is invaded by the judge if he undertakes to state a figure by way of additur which indicated the minimum of the plaintiff's possible recovery...."[10] Since *Rudnick*, this Court has repeatedly approved the use of additur in personal injury claims.[11] But, because it has not been presented, we have never expressly ruled on the constitutional claim.

■■■ Article I, Section 4 of the Delaware Constitution states that "[t]rial by jury shall be as heretofore." This provision preserves the right to trial by jury as it existed at common law before the adoption of the Delaware Constitution.[12] Thus, additur does not violate the right to a jury trial if it was part of the common law before 1776. The same result obtains if judges had the power to alter verdicts at common law. In *Carney v. Preston*,[13] Judge Quillen carefully analyzed this issue. He reviewed the merits of the majority and dissenting opinions in *Dimick v. Schiedt*,[14] a United States Supreme Court decision holding that remittitur is constitutionally permissible but additur is not. In addition, Judge Quillen detailed the early history of additur and remittitur at common law. We agree with his analysis:

If one ... accepts only remittitur precedent as existing at common law as of 1776, given remittitur now as an existing practice of long standing in Delaware ... the question becomes solely whether the recent innovation of additur violates the Delaware guarantee of jury trial if that issue were given a fresh look....

It seems to the Court that the starting point is abstract reason. There is no reasoned basis to distinguish remittitur from additur as a matter of simply logic.... In both additur and remittitur, the Court has ruled as a pre-requisite that the verdict amount is legally improper and cannot be made legally acceptable unless raised or lowered. The concepts are mirror images of each other and they should, as a matter of logic, stand or fall together....

Second, permitting additur does not change the basic decision role of the jury or the supervisory role of the judge.... [W]hen a judge grants a new trial he determines the verdict of a jury is legally inadequate or excessive and there is implicit in that decision the power to determine, as a matter of law, the upper and lower limits within which recovery by a plaintiff will be permitted.... This is the level of abstraction at which the legal principle set forth at common law should be gleaned; this is the level where the common law distinguishes the role of the trial judge from the role of the jury, the question of law from the question of fact. Remittitur and additur do not change the dividing

---

9. *Ibid.*

10. *Ibid.*

11. *See, e.g.: Moore v. Neal*, Del.Supr., No. 363, 1982, 474 A.2d 141 (ORDER) (Oct. 17, 1983); *Murphy v. Thomas*, 2002 WL 1316242 (Del.Supr.); *Wilhelm v. Ryan*, 903 A.2d 745 (Del.2006).

12. *Turnbull v. Fink*, 668 A.2d 1370 (Del. 1995).

13. 683 A.2d 47 (Del.Super.1996).

14. 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935).

line; they merely make available procedural tools respectful of the delineation.[15]

In sum, additur and remittitur do not violate the right to trial by jury because, in both cases, the judge follows the jury verdict to the extent legally permissible:

> Faced with a motion for remittitur or additur, the trial court must evaluate the evidence and decide whether the jury award falls within a supportable range. In doing so, the court still defers to the jury and reduces the jury's award to the absolute maximum amount that the record can support (in the case of remittitur) and increases the award to the absolute minimum amount that the record requires (in the case of additur).[16]

■ As a corollary to her constitutional claim, Reid complains about the process by which the trial court awarded additur. She says that the nonmoving party must be given the option to accept the requested relief or a new trial. Reid points to numerous Delaware authorities where the plaintiff moved for additur or a new trial, and the defendant was given the option to accept the additur.[17] But the reasoning behind "the choice" has nothing to do with the identity of the moving party. When a court awards additur, on motion of either party or *sua sponte*, the defendant is being required to pay more than the amount awarded by the jury. Thus, the defendant is adversely affected and is given the option of a new trial. The plaintiff may not be satisfied with the amount of the additur, but she is not adversely affected since she is receiving more than the amount awarded by the jury. The trial court here correctly offered the party adversely affected—Hindt—the choice of accepting additur or a new trial.

■ Reid also contends that the $2,500 additur award was unreasonably low. She says that the award should have reflected the fact that she suffered permanent injuries and incurred medical bills in excess of $7,000. We review the amount of the additur award for abuse of discretion.[18] The trial court considered the evidence and explained the basis for its award:

> In determining a reasonable additur amount, the defendant must be given every reasonable factual inference and the Court must determine what the record justifies as an absolute minimum. Applying this standard to the evidence, one can conclude that the injuries proximately caused by the accident did not last longer than a few weeks. A December 10, 1999 MRI came back normal. Dr. DuShuttle's January 17, 2000 examination showed no signs of objective neuro, motor, or sensory deficits. Moreover, by her own admission, the plaintiff's physical state significantly improved within ten weeks of the accident. Under such circumstances, an additur of $2,500 seems reasonable and appropriate.[19]

■ The trial court applied the correct standard and its decision is supported by the evidence. Accordingly, we find that the trial court acted within its discretion. We note, however, that Reid was not given the opportunity to be heard on the appro-

15. *Id.* at 55 (Internal quotations omitted.).

16. *Murphy v. Thomas,* 2002 WL 1316242 at *1 (Del.Supr.) (Internal citations omitted.).

17. *See, e.g.: Hedenberg v. Best,* 2005 WL 1953038 (Del.Supr.); *Breeding v. Johnston,* 1992 WL 148005 (Del.Super.); *Battle v. Mercier,* 1986 WL 4863 (Del.Super.).

18. *Murphy v. Thomas,* 2002 WL 1316242 at *1 (Del.Supr.).

19. *Reid v. Hindt,* 2008 WL 795306 at *1 (Del.Super.) (internal citations omitted).

priate amount of additur before the trial court ruled. Although it is not mandatory, when the court is ordering additur or remittitur, we think it would be better practice to afford the parties some limited opportunity to present their views on the amount to be ordered. There is nothing in this record to suggest that the trial court overlooked any evidence bearing on this issue, but input from the parties in future cases would help avoid that possibility.

■ Finally, Reid argues that the trial court erred in granting summary judgment to Daisy because there were material issues of fact in dispute. She points to evidence that there was only one flagger at the scene of the accident, whereas Daisy was contractually required to have two flaggers. In addition, Reid claims that there was evidence indicating that the placement and number of warning cones contributed to the congestion at the site of the accident. Reid theorizes that additional flaggers could have limited the number or speed of the cars approaching the construction site, thereby preventing the accident.

■ This Court reviews a grant of summary judgment *de novo*.[20] "[I]n order to prevail in a negligence action, a plaintiff must prove by a preponderance of the evidence that the defendant's action breached a duty of care in a way that proximately caused injury to the plaintiff."[21] To establish proximate cause, Reid had to prove, "that there was a reasonable probability of a causal connection between each defendant's negligence and [her] injury."[22] Summary judgment was properly granted in this case because Reid failed to

present evidence that anything Daisy did or did not do was a proximate cause of the accident.

The record establishes that Maher, the driver of the first car, had come to a complete stop, waiting for construction equipment to cross the road. Reid saw at least one flagger, signs warning drivers to slow down, and several cones tapering off the right lane. She was able to come to a stop without hitting Maher. Hindt admitted that she was negligent, and that she collided with Reid because she was not paying attention. Given these undisputed facts, it makes no difference how many flaggers or warning cones Daisy was using. On this record, the only cause of the accident was Hindt's inattentive driving.

### CONCLUSION

For the foregoing reasons, the judgments of the Superior Court are affirmed.

**20.** *Acro Extrusion Corp. v. Cunningham,* 810 A.2d 345, 347 (Del.2002) (citing *Blue Hen Lines, Inc. v. Turbitt,* 787 A.2d 74, 77 (Del. 2001)).

**21.** *Rayfield v. Power,* 2003 WL 22873037 at *1 (Del.Supr.) (internal citations omitted).

**22.** *Money v. Manville Corp. Asbestos Disease Compensation Trust Fund,* 596 A.2d 1372, 1377 (Del.1991).