# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

JANICE THOMPSON and MARY  )
HARVEY,  )
     )
     Plaintiffs,  )
     )     C.A. No. N12C-07-053 JRJ
     v.  )
     )
LAUREN A. SANDERS  )
     )
     Defendant.  )

## OPINION

Date Submitted: February 13, 2015
Date Decided: May 14, 2015

*Upon Plaintiffs' Motion for New Trial or, in the Alternative, Additur*: **DENIED in part**, **and GRANTED in part.**

Heather A. Long, Esquire, Kimmel Carter, Roman, Peltz & O'Neill, P.A., 56 W. Main St., 4th Floor, Newark, Delaware 19702, Attorney for Plaintiffs.

Patrick G. Rock, Esquire, Heckler & Frabizzio, 800 Delaware Avenue, Suite 200, Wilmington, Delaware 19899, Attorney for Defendant.

**Jurden, P.J.**

# I. INTRODUCTION

Plaintiffs Mary Harvey and Janice Thompson sued Defendant Lauren Sanders for personal injuries allegedly sustained in an automobile accident caused by Defendant. A two-day jury trial was held in October 2014. Defendant admitted that she was negligent in causing the accident, and at trial the only issues left for the jury to decide were what injuries were proximately caused by Defendant's negligence and the amount of damages, if any, to which Plaintiffs were entitled.

The jury heard testimony from the Plaintiffs and four medical experts. Dr. Madgy Boulos testified for Harvey and Dr. Kevin Hanley testified for the defense on Harvey's claims. Dr. Peter Bandera testified for Thompson and Dr. Andrew Gelman testified for the defense on Thompson's claims.

At the close of evidence, the Court granted Harvey's motion for judgment as a matter of law because it was undisputed that Harvey suffered a lumbar and cervical strain as a result of the car accident.[1] The Court denied Thompson's motion for judgment as a matter of law. On October 28, 2014, the jury entered a zero dollar verdict as to both Plaintiffs.

Plaintiffs filed a timely Motion for New Trial, or in the Alternative, Additur pursuant to Superior Court Civil Rule 59 on November 10, 2014,[2] arguing that no reasonable jury could have returned a verdict of zero dollars based on the

---

[1] The Motion was styled as, "Plaintiffs' Motion for Directed Verdict." Trans. ID. 56227321.

[2] Plaintiffs' Motion for New Trial or, in the Alternative, Additur ("Pls.' Mot. New Trial") (Trans. ID. 53619402).

uncontradicted medical evidence that they sustained some physical injury in the accident.[3] In response, Defendant argues that because both Harvey's and Thompson's expert medical opinions were contradicted and based substantially on the Plaintiffs' subjective complaints, the jury could (and did) properly disregard the Plaintiffs' expert medical opinions.[4]

## II. STANDARD OF REVIEW

Superior Court Civil Rule 59(a) provides that a new trial may be granted for "any of the reasons for which new trials have heretofore been granted in the Superior Court."[5] Historically, this Court has exercised its "power to grant a new trial with caution and extreme deference to the findings of a jury."[6] Consequently, the Court "will not set aside a jury's verdict unless the evidence preponderates so heavily against the jury verdict that a reasonable juror could not have reached the result."[3]

"In a personal injury suit, if a plaintiff conclusively proves an injury worthy of compensation resulting from the defendant's tortious conduct, the plaintiff is entitled to at least some amount of damages."[7] In determining whether an injury resulted from the defendant's conduct, "a jury may reject an expert's medical

---

[3] *Id.* ¶¶ 12, 20.

[4] Defendant Lauren A. Sanders' Response to Plaintiffs' Motion for a New Trial or in the Alternative Additur (Def.'s Resp.") (Trans. ID. 56390877).

[5] Super. Ct. Civ. R. 59(a); *Amalfitano v. Baker*, 794 A.2d 575, 577 (Del. 2001) (citing *Storey v. Camper*, 401 A.2d 458, 461 (Del. 1979)).

[6] *Amalfitano*, 794 A.2d at 577 (citing *Lacey v. Beck*, 161 A.2d 579 (Del. Super. 1960)).

[7] *Walker v. Campanelli*, 2004 WL 2419104, at *2 (Del. 2004) (TABLE) (internal quotations omitted).

opinion when the opinion is substantially based on the subjective complaints of the patient."[8]  Additionally, "when medical experts differ on objective findings, the jury is free to believe whichever expert they find more credible."[9]  However, where uncontested medical testimony links an injury to its proximate cause and is confirmed by objective medical tests supporting a plaintiff's subjective complaints about her injuries, a jury award of zero damages is against the weight of the evidence.[10]

## III.  DISCUSSION

### A.  Plaintiff Janice Thompson

Thompson argues that she presented uncontradicted objective medical findings of injury proximately caused by the car accident, evidenced by a positive electromyogram ("EMG") test, muscle spasm in the neck and back, and a positive straight leg test.[11]  Further, Thompson points out that Defendant's own medical expert testified that Thompson sustained a "strain or sprain overlapping the lower neck and back."[12]

"It is settled law that, when an expert's opinion is based on a patient's subjective complaints, and the jury does not find the patient credible, the jury may

---

[8] *Id.* (citing *Kossol v. Duffy*, 765 A.2d 952 (Del. 2000)).

[9] *Id.*

[10] *Amalfitano*, 794 A.2d at 577; *Walker*, 2004 WL 2419104, at *2.

[11] Pls.' Mot. New Trial ¶ 9. An EMG is a nerve test used to diagnose radiculopathy. Peter B. Bandera, M.D., Deposition at 12–13 ("Dr. Bandera Dep.") (Oct. 14, 2014). Radiculopathy is medical term for nerve inflammation from the root of the neck or the root of the back. *Id.* at 13.

[12] Andrew Gelman, D.O., Deposition at 24–25 ("Dr. Gelman Dep.") (May 9, 2014).

reject the expert's opinion."[13]  Defendant's expert, Dr. Gelman, testified that he formed his opinion that Thompson suffered a strain or a sprain based on Thompson's subjective complaints, not objective findings.[14]

Thompson's case is analogous to *Walker v. Campanelli*.  In *Walker v. Campanelli*, the plaintiff's expert opined that as a result of an automobile accident, the plaintiff sustained multiple injuries evidenced by an abnormal EMG test that correlated with an abnormal MRI.[15]  The defense expert refuted the plaintiff's expert testimony, stating that the positive objective finding on the MRI was not "clinically relevant" because the positive finding did not necessarily result from the car accident, but, rather, more likely resulted from normal wear-and-tear.[16]  The Delaware Supreme Court held in *Walker* that, when a jury is presented with an expert medical opinion that is based substantially on the patient's subjective complaints and is confirmed by objective evidence, but "the significance of the

---

[13] *Kossol v. Duffy*, 2000 WL 1780799, *1 (Del. 2000) (TABLE); *Amalfitano*, 794 A.2d at 578.

[14] Dr. Gelman Dep. at 24–25.  Thompson's case is analogous to *Kossol v. Duffy*.  In *Kossol*, the plaintiff argued that the jury was not free to disregard the medical testimony because all of the medical experts agreed that he was injured in the accident. 2000 WL 1780799, *1 (Del. 2000) (TABLE). The plaintiff in *Kossol* relied on *Maier v. Santucci*, where the Delaware Supreme Court held that, "once the existence of an injury has been established as causally related to the accident, a jury is required to return a verdict of at least minimal damages." *Id.* (quoting *Maier v. Santucci*, 697 A.2d 747, 749 (Del. 1997)).  The Supreme Court rejected the plaintiff's argument, holding that "[i]t is settled law that, when an expert's opinion is based on a patient's subjective complaints, and the jury does not find the patient credible, the jury may reject the expert's opinion." *Id.*  The Supreme Court distinguished *Maier*, explaining that in *Maier*, "the medical experts for both sides agreed that Maier had suffered an injury as a result of the accident. Here, Dr. Townsend, the defense expert, formed a medical opinion based on Kossol's subjective complaints. Dr. Townsend testified that, 'based on [Kossol's] complaints at the time of the first accident, he sustained cervical and lumbosacral strain . . . .'" *Id.*

[15] *Walker*, 2004 WL 2419104, at *3.

[16] *Id.*

objective evidence is hotly contested," the jury may disregard that expert testimony because the jury could have reasonably concluded that the expert based that conclusion on the plaintiff's subjective complaints.[17] In Thompson's case, as explained below, the jury heard conflicting expert medical testimony regarding the significance of the objective evidence and the proximate cause of Thompson's injuries. Under those circumstances, the jury was free to believe the expert testimony it found more credible and disregard medical opinions based on Thompson's subjective complaints.[18]

Following the car accident on July 10, 2010, Thompson's initial care was at Limestone Medical Aid Unit.[19] Thompson reported that she had neck pain radiating down her left arm and low back pain.[20] Limestone Medical Aid diagnosed Thompson with a cervical/thoracic strain and prescribed Naprosyn an anti-inflammatory analgesic and Flexeril for muscle relaxation purposes.[21] Thompson was instructed to follow up with her primary care physician in one week.[22]

After her visit to Limestone Medical Aid, Thompson went on vacation. When Thompson returned from vacation she made an appointment with her dentist

---

[17] *Id.* at *4 (internal quotations omitted).
[18] *Id.* at *2.
[19] Dr. Bandera Dep. at 10; Dr. Gelman Dep. at 14.
[20] Dr. Bandera Dep. at 10.
[21] Dr. Gelman Dep. at 15.
[22] Dr. Bandera Dep. at 10; Dr. Gelman Dep. at 15.

on July 27, 2010, because she thought she cracked a tooth during the car accident. Two days later, on July 29, 2010, Thompson visited her primary care physician, Dr. Paula Barry.[23] During this visit, Dr. Barry found a muscle spasm in Thompson's neck and a positive straight leg test indicating nerve irritation in the lower back.[24]

On August 26, 2010, Thompson underwent an MRI and EMG test on her neck and back.[25] Dr. Bandera testified that the EMG showed acute inflammation in the neck and the low back.[26] Thompson was then referred to Dr. Sugarman, a neurosurgeon.[27] On September 1, 2010, Dr. Sugarman examined Thompson.[28] Dr. Gelman testified that Dr. Sugarman did not identify any objective findings of injury but noted that Thompson's subjective complaints were consistent with a strain or sprain.[29]

In December 2010, Thompson went to see Dr. Witherell, a board certified anesthesiologist.[30] Thompson told Dr. Witherell that she had back pain *before* the car accident in the "mild range of three to four over ten," and following the accident the back pain was an "eight to nine level out of ten."[31] Dr. Witherell

---

[23] Dr. Bandera Dep. at 10–14.
[24] *Id.* at 11–12.
[25] *Id.* at 14–19.
[26] *Id.*
[27] Dr. Bandera Dep. at 19–20; Dr. Gelman Dep. at 16.
[28] Dr. Gelman Dep. at 24–25.
[29] *Id.* at 23–25.
[30] Dr. Bandera Dep. at 20.
[31] *Id.* at 21.

administered injections in Thompson's low back to reduce pain and reduce inflammation around the nerves.[32]

In January 2012, more than a year after the car accident, Dr. Bandera performed a physical examination on Thompson.[33]  At that time, Thompson was complaining of neck pain with radiation into the left shoulder and low back pain.[34]  Dr. Bandera noted a spasm in her neck and back and a positive straight leg test, indicative of nerve inflammation.[35]  Dr. Bandera testified that the results of Thompson's examination were consistent with the 2010 EMG findings of inflammation in the neck and back.[36]  Dr. Gelman, however, testified that the EMG findings were inconsistent and not reliable because five days after the EMG test, when Dr. Sugarman examined Thompson, he did not identify numbness or tingling in the area where the EMG suggested there should have been sensory or motor abnormalities.[37]  Thus, according to Dr. Gelman, Dr. Sugarman's findings contradicted the "objective" EMG findings.  Moreover, when Dr. Gelman examined Thompson in January 2014, he conducted several leg maneuver tests with negative results.[38]

---

[32] *Id.* at 21–22.
[33] *Id.* at 26.
[34] *Id.* at 26.
[35] *Id.* at 27–28.
[36] *Id.* at 28.
[37] Dr. Gelman Dep. at 46–48.
[38] *Id.* at 21–22.

Thompson argues that muscle spasms are objective medical findings supporting her subjective complaints. Defendant argues that the significance of the muscle spasms was undermined by the fact that Thompson waited until three weeks after the car accident to visit her doctor.[39] Dr. Gelman testified that because spasms can be caused by many different factors, Thompson's spasms could have been caused by her weight or poor conditioning.[40] Further, both Dr. Bandera and Dr. Gelman testified that a person can get a muscle spasm from simply sitting in a chair, such as a dentist chair, or staying in one position for too long.[41]

Defendant also argues that the significance of the positive straight leg test was refuted. Dr. Gelman testified that the straight leg test was based on Thompson's subjective complaints, and both Dr. Bandera and Dr. Gelman testified that Thompson had significant pre-existing low back problems.[42] Thompson was treated for low back pain on and off for two years prior to the accident, and had several MRIs and X-rays taken during that time.[43] One MRI was taken in May 2010, two months before the accident.[44] Dr. Gelman testified that the MRIs and X-rays dating back to 2008 indicated that Thompson suffered from chronic back

[39] Def.'s Resp. ¶ 4; Dr. Bandera Dep. at 54.
[40] Dr. Gelman Dep. at 43–44.
[41] Dr. Gelman Dep. at 52–53; Dr. Bandera Dep. at 52–53.
[42] Dr. Gelman Dep. at 40–42; Dr. Bandera Dep. at 55–60.
[43] Dr. Gelman Dep. at 11–13; Dr. Bandera Dep. at 55–60.
[44] Dr. Bandera Dep. at 58.

problems since at least 2008.[45] According to Thompson, after the car accident the intensity and location of her back pain changed. However, Dr. Gelman testified that the MRI taken after the car accident showed degenerative changes likely related to wear and tear and genetics, and did not show anything actively or immediately changing as a result of the accident.[46] Dr. Gelman also testified that Thompson had knee surgery and that it is not uncommon for patients with knee complaints to also develop back pain.[47]

In addition to conflicting testimony regarding the objective medical evidence, Thompson's credibility was undermined during cross-examination. For example, Thompson testified that she had pain in her back prior to the car accident but not in her low back. But, then Thompson admitted she had several X-rays taken of her low back prior to the accident because she was suffering from low back pain. And, although Thompson was treated for low back pain for two years prior to the accident, and had several MRIs and X-rays taken during that time, Thompson told Dr. Sugarman that she did not have any issues with her low back and had never been treated in the past for any back problems.

Thompson's objective evidence of injury was heavily contested and Thompson's credibility was called into question. Consistent with Delaware law, in determining whether Thompson's injuries proximately resulted from Defendant's

---

[45] Dr. Gelman Dep. at 25–27.
[46] *Id.* at 25–28.
[47] *Id.* at 36.

negligence, "the jury [was] free to believe whichever expert they [found] to be more credible"[48] and disregard any medical opinion based on Thompson's subjective complaints.[49]

## B. Plaintiff Mary Harvey

At trial, the Court granted partial judgment as a matter of law in Harvey's case because it was undisputed that Harvey suffered a lumbar and cervical strain as a result of the car accident.[50] The Court instructed the jury that what remained in dispute was the degree, severity, and duration of that injury and whether it resulted in any permanent impairment. The Court also instructed the jury that Harvey was only entitled to recover damages proximately caused by Defendant's negligence.

In addition to the lumbar and cervical strain, Harvey claimed she suffered injuries to her arms and wrists. Dr. Boulos testified that he examined Harvey about a week after the accident on July 19, 2010.[51] During that exam, in addition to neck and back pain, Harvey complained of muscle spasms and tingling sensation in her arms.[52] Dr. Boulos opined that Harvey suffered a flexion/extension injury

---

[48] *Walker*, 2004 WL 2419104, at *2.

[49] *Id.*

[50] *Maier v. Santucci*, 697 A.2d 747, 749 (Del. 1997) (holding that the jury was required to return a verdict of at least minimal damages because the medical experts for both sides agreed that the plaintiff had suffered an injury as a result of the accident). Both Harvey's medical expert and the Defendant's medical expert agreed that Harvey sustained a soft tissue injury to her back and neck. Kevin F. Hanley, M.D. Deposition at 24–25 ("Dr. Hanley Dep.") (May 1, 2014); Magdy I. Boulos, M.D., Deposition at 24 ("Dr. Boulos Dep.") (Feb. 25, 2014).

[51] Dr. Boulos Dep. at 20.

[52] *Id.* at 20, 22.

that caused her neck and back pain.[53] Dr. Boulos also opined that the 2010 car accident aggravated Harvey's pre-existing carpal tunnel syndrome.[54]

In contrast, Dr. Hanley testified that Harvey's carpal tunnel syndrome was more likely caused by her work career and not the car accident.[55] Harvey's trial testimony buttressed Defendant's expert's medical opinion that the carpal tunnel syndrome was more likely caused by her work career and not the car accident.[56]

Harvey's credibility was also called into question. Both Dr. Boulos and Dr. Hanley testified that if a person uses their hands repetitively or too hard, it can lead to carpal tunnel syndrome.[57] Defendant pointed out at trial that Harvey denied working too hard with her hands in her deposition, but at trial testified that she used her hands hard and repetitively for her entire work career.

Because the jury heard conflicting testimony from Harvey's expert, Defendant's expert, and Harvey regarding the proximate cause of Harvey's arm and wrist injuries, the jury was free to believe whichever expert they found more credible, and the jury could freely disregard any medical opinion based on Harvey's subjective complaints.[58]

---

[53] *Id.* at 24.

[54] *Id.* at 48–50, 52–54, 68–67. In 2006, Dr. Boulos diagnosed Harvey with mild to moderate carpal tunnel syndrome. *Id.* at 16.

[55] Dr. Hanley Dep. at 25–26, 56–60.

[56] Harvey testified that she both used her hands hard for her entire work career and used her hands repetitively.

[57] Dr. Boulos Dep. at 63–69; Dr. Hanley Dep. at 26–30.

[58] *Walker*, 2004 WL 2419104, at *2.

In light of the undisputed fact that Harvey suffered a lumbar and cervical strain as a result of the car accident, the jury's award of zero damages is "inadequate and unacceptable as a matter of law."[59] Because the Court finds that a new trial on the issue of damages for this injury would burden the parties with additional costs and would further delay Harvey's compensation, the Court will modify the verdict by ordering an additur.[60]

"In determining a reasonable additur amount, the defendant must be given every reasonable factual inference and the Court must determine what the record justifies as an absolute minimum."[61] In *Reid v. Hindt*, the Delaware Supreme Court stated, "[a]lthough it is not mandatory, when the court is ordering additur or remittitur, we think it would be better practice to afford the parties some limited opportunity to present their views on the amount to be ordered."[62] Consequently, the Court will provide Defendant and Harvey the opportunity to be heard in writing on the appropriate amount of additur, based on the evidence presented to the jury, before the Court determines a reasonable additur amount.

---

[59] *Maier v. Santucci*, 697 A.2d 747, 749 (Del. 1997).
[60] *Littleton v. Ironside*, 2010 WL 8250830, at *2 (Del. Super. 2010); *Rudnick v. Jacobs*, 197 A. 381, 384 (1938) ("We can see no reason why parties should be put to the expense and annoyance of a new trial when the only purpose of such trial would be to have a jury make a calculation which a former one should have made and which the court is equally competent to make.").
[61] *Reid v. Hindt*, 976 A.2d 125, 131 (Del. 2009).
[62] *Id.* at 132.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for New Trial or, in the Alternative, Additur is **DENIED in part**, **and GRANTED in part.** Plaintiff Janice Thompson's motion for new trial or additur is denied. A new trial on the issue of damages for Plaintiff Mary Harvey's lumbar and cervical strain will be granted only if the defendant fails to accept the additur.[63]

**IT IS SO ORDERED.**

_____
Jan R. Jurden, President Judge

---

[63]*Id.* at 131 ("The trial court here correctly offered the party adversely affected . . . the choice of accepting additur or a new trial.").